## SYLVIA PROCACCINO vs. E. HORTON & SONS.

First Judicial District, Hartford, October Term, 1920.

WHEELER, C. J., BEACH, CASE, CURTIS and KEELER, Js.

The plaintiff's husband, an employee of the defendant, while returning to his work after dinner, was struck and killed by a train as he was crossing the railroad tracks upon one of several private ways established and maintained by different manufacturing plants for use in reaching their respective factories. These ways led easterly at right angles from a north and south highway, across the intervening railroad tracks and by a foot-bridge across a canal, near the easterly bank of which a number of manufactories, including that of the defendant, were located; and were used indiscriminately by the employees of all these plants at their con-

venience, a use which was contemplated and acquiesced in by their respective employers. A highway also crossed the railroad tracks and the canal, but this was south of many of the plants, was inconvenient and but little used. *Held* that under these circumstances the use of this method of approach to the defendant's plant was an incidental term of the decedent's contract of employment, and the danger attendant upon its use a peril incident to the service; and therefore that his injury "arose out of and in the course of his employment," within the meaning of that expression in our Workmen's Compensation Act.

Argued October 5th—decided November 10th, 1920.

APPEAL by the plaintiff from the refusal of the Compensation Commissioner of the first district to award compensation for an injury to the plaintiff's husband resulting in his death, upon the ground that it did not arise out of his employment, taken to and heard by the Superior Court in Hartford County, *Maltbie, J.*, which affirmed the decision of the Commissioner, and from this judgment the plaintiff appealed. *Error; plaintiff entitled to an award.*

The decedent was employed in a manufacturing establishment conducted by the defendant in Windsor Locks. A canal runs southerly parallel to the Connecticut River, and between the canal and the river are manufacturing plants of the defendant and others. Parallel to the canal and directly west of it, are the tracks of the New York, New Haven & Hartford Railroad Company. Parallel to both tracks and canal and directly westward of the tracks, is the Main Street of Windsor Locks. The village of Windsor Locks lies westward of its Main Street.

Directly north of the defendant's plant is the plant of the American Writing Paper Company, while directly south of the defendant's plant is the plant of the J. R. Montgomery Company. There is a foot-bridge across the canal about opposite the Montgomery plant, leading across the canal with a pathway across the railroad

tracks to Main Street. This bridge was owned and controlled jointly by the defendant and the Montgomery Company. There is also a foot-bridge and pathway leading across the canal and railroad tracks to Main Street, about opposite the plant of the American Writing Paper Company.

A highway which leaves Main Street at a right angle at a point south of all the aforesaid plants, crosses the railroad tracks, the canal and the Connecticut River and leads into Warehouse Point. Apparently from the finding there is no highway on the easterly side of the canal.

The employees of the defendant and those of the other plants, in going to and from work, used either one of these foot-bridges across the canal and the paths across the railroad tracks, or crossed the tracks and canal by the Warehouse Point highway, as might be most convenient. The railway tracks, the land on the east side of the railroad tracks, and the two foot-bridges were private property. The defendant gave no instructions to the deceased or any of its employees as to how they were to go to and from their plant. The most convenient means for employees in the situation of the decedent to reach the defendant's plant, was by way of the foot-bridge of the American Writing Paper Company which was located nearly opposite Grove Street upon which he lived; and presumably he customarily used it.

The method of approaching the defendant's plant by the Warehouse Point highway, was an inconvenient and little used method and one that, from the finding, apparently involved passing over private property in going from the Warehouse Point road northerly to the defendant's plant.

On Saturday, November 12th, the decedent when returning to work at the defendant's plant after having

dinner at his home, and while crossing the tracks just before reaching the foot-bridge of the American Writing Paper Company, was struck by a north-bound train and instantly killed.

*Jacob Berman*, for the appellant (plaintiff).

*Ralph O. Wells*, for the appellee (defendant).

Curtis, J.   The question in controversy in this case is whether the injury to the employee arose within and out of the course of his employment.   The two neighboring foot-bridges over the canal, maintained by neighboring plants, were used indiscriminately by employees of the nearby plants.   The fact that the defendant and an adjoining manufacturing concern owned and controlled one of the foot-bridges crossing the canal, from which a pathway led over the railroad tracks to Main Street, and which bridge apparently had no other use than as a way of approaching or leaving the plants to and from Main Street, practically makes the inference necessary that this foot-bridge and the pathway from it over the railway tracks, was a method of approach to the defendant's plant for employees situated as the decedent was, and one which was contemplated by the defendant for employees in its service.   The indiscriminate use of both foot-bridges by employees of neighboring plants as the method of approach for employees in the situation of the decedent, the acquiescence of the employer in such use, in connection with the facts found, leads irresistibly to the inference that the method of approaching the defendant's plant which this employee customarily used, was a method of approach which the defendant contemplated that employees, whose homes were situated as this employee's home was situated, would

ordinarily use in going to and from the Horton plant. The defendant's employment of the decedent, therefore, contemplated that he would approach and leave the plant by passing to and from the highway over private property, including either of the foot-bridges and the railway tracks parallel with Main Street.

Under these circumstances this employee was within the scope of his employment when he was passing to or from his work at the plant over the private property lying between Main Street and the plant. In other words, the use of this method of approach to the plant by this employee was an incidental term of his contract of employment annexed to it by the consent of his employers. *Merlino* v. *Connecticut Quarries Co.,* 93 Conn. 57, 104 Atl. 396. When this employee, under the facts found, entered upon the private property lying between Main Street and the defendant's plant, he came within the zone of his employment, and all dangers and perils incident to the use of this method of approach were perils incident to and arising out of his employment.

It does not render the dangers of this contemplated method of approach any less an incident of the decedent's employment, that there existed a method of approach by way of the Warehouse Point highway which would permit him to cross the railroad tracks on a highway. This method of approach, for persons in the situation of the decedent, was highly inconvenient, and it was not contemplated by the defendant that the employee should ordinarily use it. Apparently, the approach to this plant by way of the Warehouse Point road involved a much longer passage over private property than the method of approach followed by the decedent. If our interpretation of the finding is correct, there was no way to reach the Horton plant, that did not involve passing over private property.

In *Fumiciello's Case*, 219 Mass. 488, 107 N. E. 349, crossing the railway tracks was not a method of approach to the employer's plant, which the employer contemplated that all employees living in certain localities should use; and in that particular is distinguished from this case. Furthermore, it does not appear in that case that the railway tracks were directly adjacent to the plant or constituted one of several strips of private property lying between the plant and a highway.

In *Sundine's Case*, 218 Mass. 1, 105 N. E. 433, the claimant was injured while upon stairs over which her employer had no right of control, but the use of which by her was contemplated in her employment. The fact that she was a licensee or trespasser on another's property did not bar the claimant's recovery of compensation. The fact that her use of the stairway was contemplated by the employer, was, apparently, the essential fact which made such use an incident of her employment. The fact that the stairway was the only method of approach, conclusively established the fact that the use was contemplated by the employer. The fact that the contemplated way of approach in the present case may have passed over several strips of land owned by several different proprietors, would not change the legal effect of the situation. The private property passed over was, as a whole, adjacent to the plant. If the stairway in the *Sundine* case had passed through several floors of the building, each floor owned by a different proprietor, would the employer in that case only have been held liable for an injury on the stairway occurring on the floor first entered by the employee? The answer is obvious.

We hold that the decedent at the time of his injury was using a way of approach over private property from a highway to the defendant's plant, which way

of approach the defendant, in its employment of the decedent, contemplated that he should use; and that the decedent in such use of the way was, after he left the highway, in the course of his employment, and that the injury arose out of a danger incident to his employment. 1 Honnold on Workmen's Compensation, p. 368; *O'Toole's Case*, 229 Mass. 165, 118 N. E. 303; *Keaney's Case*, 232 Mass. 532, 122 N. E. 739; *Starr Piano Co.* v. *Industrial Accident Com.*, 181 Cal. 433, 184 Pac. Rep. 860; *Papineau* v. *Industrial Accident Com.* (Cal.), 187 Pac. Rep. 108; 9 B. W. C. C. p. 459; *Merlino* v. *Connecticut Quarries Co.*, 93 Conn. 57, 104 Atl. 396; *Carter* v. *Rowe*, 92 Conn. 82, 101 Atl. 191; Chartres on Judicial Interpretation of Workmen's Compensation Law, p. 233.

There is error, the judgment is reversed and the Superior Court directed to enter its judgment sustaining the appeal from the Commissioner, vacating his award, and directing him to make an award in favor of the claimant for such amount as the facts found may warrant.

In this opinion the other judges concurred.