### ROBERT ROURKE'S CASE.

Suffolk. December 8, 1920. — January 20, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Workmen's Compensation Act*, Injuries to which act applies. *Labor. Strike.*

One, who entered employment as a first class iron moulder with a machine company which was a subscriber under the workmen's compensation act at a time when a strike was in progress at its plant, the terms of the contract of employment being that the company should provide protection for him in the hours both

of his employment and of his rest and recreation during all the time that he remained an employee of the company and that the company should compensate him if he was harmed by reason of not receiving such protection, cannot maintain a claim under the workmen's compensation act for injury due to an assault upon him when, after five o'clock in an afternoon, he had "dropped his tools, changed into street dress, rung in his time and left the factory" and had proceeded to the highway where, with fellow employees, he was being escorted by the superintendent of the factory on his way to a boarding house, when, due to an altercation between the superintendent and one of a group of men on the street in sympathy with the strikers, who had attempted to talk with a fellow employee of the claimant, "the whole crowd came over and mixed right in," such injury not having been received in the course of the claimant's employment.

CERTIFICATION to the Superior Court, under the provisions of the workmen's compensation act, of a decision of the Industrial Accident Board that injuries, received by the claimant on May 22, 1919, during a strike in the plant of his employer, the Holyoke Machine Company, and while, with other employees, he was being escorted by his superintendent from his work to a boarding place, occurred in the course of and arose out of his employment.

Material evidence before and findings of the Industrial Accident Board are described in the opinion.

In the Superior Court, by order of *Hammond*, J., a decree was entered awarding compensation to the claimant; and the insurer appealed.

The case was submitted on briefs.

*G. Gleason*, for the insurer.

*J. Isaacs*, for the claimant.

PIERCE, J. In response to an advertisement of the Holyoke Machine Company in a Boston newspaper for "a few first class iron moulders," Robert Rourke, the claimant, knowing there was a strike on at the company's factory, on May 21, 1919, went to the office of the Holyoke Machine Company, Worcester, Massachusetts, in search of employment.

He there met one White, superintendent of the Holyoke Machine Company, and was hired by him on May 21, 1919, for an indefinite time at $6 a day.

During their negotiations, White said to Rourke, "I will see that you are taken care of and give you plenty of protection and I will go home with you evenings. I will guarantee you protection. We have a boarding house for you. I will be with you." The boarding house was not running at the time, it was just a

rooming house. It was started exclusively with the idea of furnishing board for the National Foundry Association * men because they had trouble in boarding them in their houses and they were willing also that the rest of the men should benefit by it. White went to 166 Main Street himself and made arrangements for boarding the men.

Rourke, who did not come as a worker supplied by the National Foundry Association, was told by White "to go to the boarding house as that would be the best place for him . . . in a large city with a strike on."

· The night of May 21, 1919, Rourke went to the boarding house and slept there unmolested. On the next morning he went from the rooming house to the company's factory and as a moulder worked there until sometime between half past four and five o'clock in the afternoon. He then "dropped his tools, changed into street dress, rang in his time and left the factory, going out on the street with the [twelve] other men." While on Thomas Street, a public highway in the city of Worcester, at a point above one hundred and fifty feet from the shop, a man assaulted Rourke by striking him in the face. White "was walking with the men at the time of the assault."

White testified that "In the first place it was necessary that he be with the men on account of the bills at the restaurant, and then it was to his interest that none of the union pickets speak to the men; therefore he thought that his presence would prevent the union pickets from talking to the men." He had before testified "that he went to the Capital Lunch with the men at night and in the morning, and at noon had the lunch sent in from the Capital Lunch." ·

He described the assault as follows: When they came out of the factory, there were twenty-five or thirty men on the opposite side of the street. He and the men were going to the boarding house. As they started up the street, a man came across the street and started to talk with one of the men in front. He was in back of the line and he went up and told the man, whom he did

---

* This was described by the witness White as "the National Foundry Association, which is an association controlled entirely by the members and one of the benefits of this association is to furnish necessary men in case of trouble." The Holyoke Machine Company was a member of the association.

not know, that he had no business talking to his men. The man made a grab at him and when he turned around and started back, the whole crowd came over and mixed right in. The claimant did not know who assaulted him and White testified that the man "did not work in his establishment."

The Industrial Accident Board ruled that the "claimant's employment was continuous from the time he left the boarding house furnished by the subscribers to go to the place where his work was actually to be performed until his return to the same boarding house at night." Shortly stated it ruled that the assault on the claimant was made in the course of his employment.

The Industrial Accident Board stated that, while it did not rule that the guarantee of protection imposes liability upon the insurer solely because of that guarantee, "it is evidence, taken in connection with the fact that the superintendent was actually escorting the employee and others from their place of employment to the boarding house furnished by the employer, and the additional fact that the assault occurred as a direct result of the superintendent's talk with one of the group of pickets who committed the assault, that the employment was continuous and that the resulting injury arose out of and in the course of the claimant's employment."

We cannot agree with the reasoning or with the result arrived at by the board. Unless the incidents of employment be exceptional, the relation between a master and his servant is suspended when the servant leaves the place of his actual employment at the close of his day's work to go to his home, and again becomes active when after the interval of rest the laborer puts himself in a position where he can do the work of his employment at the place where it is to be performed. *Langley* v. *Boston Elevated Railway*, 223 Mass. 492, 496.

In the case at bar the day's work of the claimant came to an end when he dropped his tools, rang in his time, left the place of his employment and entered upon the public highway. While not conclusive in the determination of the incidents of the employment, it is worthy of consideration that thereafter the employer under the contract of employment had no legal right to command the services of the claimant and he was under no duty of obedience thereto.

As bearing upon the question of the incidents of the employment, we can perceive no resemblance between a contract of protection against criminal acts of third persons who may seek to coerce a hostile employer to grant their demands through the intimidation of and assaults upon his servants and a contract of employment which has regard to conditions and circumstances which are the natural and not abnormal concomitants of the work to be performed under the contract, for example, agreements for transportation, when the place of work is at a distance. *McGuirk* v. *Shattuck*, 160 Mass. 45. *Kilduff* v. *Boston Elevated Railway*, 195 Mass. 307. *Donovan's Case*, 217 Mass. 76. See *Harbroe's Case*, 223 Mass. 139, 142.

Without decision, we assume that the claimant under the terms of the employment had a contract to which he could look for compensation if harm should come to him because the company had failed to keep its agreement to provide protection and we further assume that the agreement covered all the time he remained an employee of the company whether the harm and injury resulted to him during his hours of employment or in the intervals of time which are allotted to rest and recreation. But we do not think the effect of the contract was to make the employment of the claimant continuous or that it made him as the result of the contract a servant of the company after his day's work was done and he had left the place of his employment to go home. *Poulton* v. *Kelsall*, [1912] 2 K. B. 131.

It results that the decree must be reversed and a decree entered for the insurer.

*Decree accordingly.*