UNIVERSAL PORTLAND CEMENT COMPANY *v.* SPIRAKIS ET AL.

[No. 11,425. Filed November 21, 1922.]

1. MASTER AND SERVANT.—*Workmen's Compensation Act.—Injuries While Going to or Returning from Work.—Compensation.* —Although it is the general rule that where an employe receives an injury by accident on his way to work before he has reached his employer's premises, or on his way from work, after he has left the premises, the accident is not one arising either out of or in the course of his employment, such rule is not applicable where an employe is injured on the premises of

another along a way which the parties contemplated he should use, as a means of ingress or egress to and from his work, and which he was so using at the time of his injury, or if, at the time of the accident, the employe is under the orders of his employer, or furthering his employer's interest, or if when injured, the employe is being transported to or from his work by the employer as a part of the contract of employment. p. 21.

2. MASTER AND SERVANT.— Workmen's Compensation Act.— Agreed Statement of Facts.—Inferences.—Injury in Course of Employment.—In a proceeding under the Workmen's Compensation Act (Acts 1915 p. 392, §80201 et seq. Burns' Supp. 1921) for compensation for the death of a workman, the agreed statement of facts held not to warrant the inference that decedent, while in the act of taking a train to go to his home after he had finished his day's work, was subject to the control of his employer's watchman, whose duty it was to announce to employes the arrival of trains at a station adjacent to the employer's premises, so as to support the contention that decedent was in the line of his employment when struck by a train passing the station. p. 23.

3. MASTER AND SERVANT.—Workmen's Compensation Act.— Injuries While Going from Work.—Compensation.—In a proceeding under the Workmen's Compensation Act (Acts 1915 p. 392, §80201 et seq. Burns' Supp. 1921) for the death of a workman, where the evidence showed that decedent had left his employer's premises after completing his day's work and gone to a railroad station to take a train to his home, and, while crossing the tracks to reach his train, was struck by another train, compensation cannot be awarded for his death, since the relation of carrier and passenger had been established between decedent and the railroad company. p. 25.

From the Industrial Board of Indiana.

Proceedings for compensation under the Workmen's Compensation Act by Plousia Spirakis and others against the Universal Portland Cement Company. From an award for applicants, the defendant appeals. Reversed.

Bomberger, Peters & Morthland and Knapp & Campbell, for appellants.

Hodges, Ridgely & McNeff and John Fox, for appellees.

BATMAN, C. J.—This is an appeal from an award of compensation in favor of appellees, arising from the death of Nick Spirakis, an employe of appellant. It is based on a claim that there is no evidence to sustain the finding that said employe "received a personal injury by an accident arising out of and in the course of his employment, resulting in his death." The undisputed evidence which appears as a stipulation establishes the following facts, pertinent to the question submitted for our determination: On the day said Nick Spirakis met his death, he was an employe of appellant, and had been so engaged for several months prior thereto. He worked in appellant's plant on said day, and met his death by accident on his way to board a train, after he had quit his work, under the circumstances hereinafter stated. The New York Central Railroad Company's tracks run in an easterly and westerly direction near appellant's factory, which is situated on the north side thereof. Prior to the accident in question, said company had granted to appellant and its servants the right to use a private crossing, running from its premises across said railroad tracks. After said grant, all of appellant's employes used said private roadway over said tracks in going to and from their work, as there was no other means of ingress or egress to and from the buildings of appellant's factory, which are located about one hundred feet north of the north right of way line fence of said company. There is a line of railroad, owned by another company, between said factory buildings and said fence. The space between said fence and the north line of rails of the New York Central Railroad Company is about fifty feet in width. The tracks of said company at such place consist of a low speed track on the north, two main tracks in the center, and a low-speed track on the south. Prior to the accident resulting in the death of Nick Spirakis,

said New York Central Railroad Company, at the request of appellant, had erected a station on its own premises, about twenty-five feet west of said private crossing, for the use of appellant's employes, and others having business with it, which station is maintained by said railroad company, and is listed by it as a regular stop. Appellant had theretofore entered into an agreement with said company to hold it harmless, and to indemnify it against loss, on account of accidents happening to the employes of appellant, and others, crossing said railroad tracks upon said crossing. The trains of said company took on and delivered mail at said station for appellant and its employes, and a substation of the Gary post office was maintained on the grounds of appellant for the distribution of mail to it and its employes. There was no means of ingress or egress to or from said railroad station, except over the private crossing of appellant. Various trains of said railroad company stopped at this crossing to receive and discharge employes of appellant, and those having business with it at its factory. Said employes, in boarding said trains and alighting therefrom, did not always get on or off on the board walk across said tracks, and did not always use said walk in crossing the same. At times, when convenient, they would pass on either side of said walk, for the reason that not more than one step of a car could be stopped at said board crossing, and such method of travel was the usual and customary one. Approximately 1,500 men worked in appellant's factory each day. A large number of them used the trains of said railroad company in coming to and going from their work, and some went over a private road of appellant for a distance of two miles to Indiana Harbor. The said Nick Spirakis lived at Gary, Indiana, and used said trains in going to and coming from his work at appellant's factory, as was the custom of a large number of

the employes working thereat. He paid his own fare to said railroad company in making such trips. Appellant kept a watchman at the crossing in question to take up receipts from trucks entering and leaving its factory, to put mail on the trains, as hereinbefore mentioned, and to watch for the approach of trains. At the time of the accident, resulting in the death of said Nick Spirakis, he had left his work at appellant's factory, and had been waiting in said station of said railroad company for a train on which to take passage, from ten to fifteen minutes. At the time he received his said injuries he was passing from said station in a southeasterly direction, across said tracks, to get on an eastbound passenger train of said railroad company, which was the first passenger train to Gary, Indiana, where he lived, passing after he quit work. When he reached a point about ten feet west of the wooden private crossing over the tracks of said railroad company, he was struck and killed by a west-bound train thereof, passing over its track farthest north. Prior to the time said decedent started to cross said tracks, said watchman notified appellant's employes, who were waiting to take passage on said east-bound train, of its approach by announcing, "East-bound passenger train." A large number of such employes were waiting for this train, and crossed over the tracks and got on the same; but said decedent did not succeed in doing so, but was killed while attempting to cross the track between said station and said train, which train he usually took, and was attempting to take for his home, at the time he received his fatal injuries.

It appears from the foregoing statement of facts, that said Nick Spirakis was an employe of appellant, and had been working for it on the day that he received his fatal injuries; that prior thereto he had quit his work, and had left appellant's premises; and

that at the time of receiving such injuries he was·attempting to reach a train in order to board the same, and be taken to Gary, Indiana, where he lived. It may be stated as a general rule that where an employe receives an injury by accident on his way to work before he has reached his employer's premises, or on his way from work, after he has left such premises, the accident cannot be said to arise either out of or in the course of his employment. *Indian Creek Coal, etc., Co.* v. *Wehr* (1920), 74 Ind. App. 141, 128 N. E. 765; Harper, Workmen's Compensation 69; *DeConstantin* v. *Public Service Com.* (1914), 75 W. Va. 32, 83 S. E. 88, L. R. A. 1916A 329; *Nesbitt* v. *Twin City, etc., Co.* (1920), 145 Minn. 286, 177 N. W. 131, 10 A. L. R. 165; *Erickson* v. *St. Paul City R. Co.* (1918), 141 Minn. 166, 169 N. W. 532; *Fairbank Co.* v. *Industrial Com.* (1918), 285 Ill. 11, 120 N. E. 457; *Hills* v. *Blair* (1914), 182 Mich. 20, 148 N. W. 243. There are a number of conditions, however, under which this general rule is not applicable, among which we note the following: It is not applicable where an employe is injured on the premises of another along a way which the parties contemplated he should use, as a means of ingress and egress to and from his work, and which he was so using at the time of his injury. *In re Maroney* (1917), 66 Ind. App. 333, 118 N. E. 134; *DeConstantin* v. *Public Service Com., supra; In re Sundine* (1914), 218 Mass. 1, 105 N. E. 433, L. R. A. 1916A 318; *Procaccino* v. *Horton & Sons* (1920), 95 Conn. 408, 111 Atl. 594; *Judson Mfg. Co.* v. *Industrial Acc. Com.* (1919), 181 Cal. 300, 184 Pac. 1; *Stewart & Son* v. *Longhurst* (1917), 10 B. W. C. C. 266; *Whittall* v. *Staveley, etc., Co.* (1917), 10 B. W. C. C. 298. Or, if at the time of such accident, the employe is under the orders of his employer, or furthering his employer's interest. *Rogers* v. *Rogers* (1919), 70 Ind. App. 659, 122 N. E. 778; *Scully* v. *In-*

*dustrial Com.* (1918), 284 Ill. 567, 120 N. E. 492; *Grieb* v. *Hammerle* (1918), 222 N. Y. 382, 118 N. E. 805, 7 A. L. R. 1075; *Mueller, etc., Co.* v. *Industrial Board* (1918), 283 Ill. 148, 118 N. E. 1028, L. R. A. 1918F 891, Ann. Cas. 1918E 808; *Hackley, etc., Co.* v. *Industrial Com.* (1917), 165 Wis. 586, 162 N. W. 921, L. R. A. 1918A 277; *Dennis* v. *White & Co.* (1917), 10 B. W. C. C. 280. Or, if at the time of such accident, the employe is being transported to or from his work by his employer, as a part of the contract of employment. *Indian Creek Coal, etc., Co.* v. *Wehr, supra; American, etc., Co.* v. *Crenshaw* (1922), 77 Ind. App. 644, 133 N. E. 394; *Swanson* v. *Latham* (1917), 92 Conn. 87, 101 Atl. 492; *Donovan's Case* (1914), 217 Mass. 76, 104 N. E. 431, Ann. Cas. 1915C 778. A consideration of the general rule stated above makes it apparent that unless the facts proved taken in connection with all reasonable inferences which may be drawn therefrom, bring the decedent within one of the exceptions stated above, the award in favor of appellees cannot be sustained. We will consider these exceptions in the inverse order from that given above. We are clear that the third exception stated is not available to appellees, as the facts proved show that the decedent, in using the trains in question for the purpose of being transported to and from his work, paid his own fare as a passenger thereon, and in so doing was acting wholly for himself, free from any control of, or relation to, appellant as his employer.

We are also clear that the second exception stated above is not available to appellees, unless it can be said that the decedent, at the time he received his fatal injuries, was under the orders of appellant, as his employer. There is no direct evidence to this effect, but we must consider whether there are any facts, which the evidence tends to prove, that will rea-

sonably support an inference that the decedent was under appellant's orders at such time. Appellees cite the fact that appellant kept a watchman at the crossing in question, a part of whose duties was to watch for the approach of trains, and who, on the occasion involved, announced the approach of the train which the decedent desired to take, prior to the time he started to cross the tracks in order to board the same. It will be observed that this watchman had other duties to perform besides watching for the approach of trains, viz., to take up receipts from trucks entering and leaving appellant's factory, and to deliver mail on the trains for appellant and its employes. In the stipulation of facts, it is not enumerated as one of the duties of such watchman to announce the approach of trains to waiting employes, but the mere statement is made that he did so on the occasion in question. We take it to be significant, that the stipulation, after reciting three purposes for which the watchman was kept at the crossing, fails to add, announcing trains to waiting employes, as a fourth, but merely states that he made such announcement on this particular occasion. True, the stipulation recites that it was one of the duties of such watchman "to watch for the approach of trains;" but there is no evidence that this duty was confined to the time when appellant's employes had quit their work, and were waiting to be transported to their homes. Hence the fair inference is that this duty continued throughout the entire day. When we consider this, in connection with the further fact that appellant had agreed to hold said railroad company harmless, and to indemnify it from loss, on account of accidents happening to its employes, and others, passing over the tracks of said company at said crossing, we are led to conclude that the only reasonable inference to be drawn, as to the purpose of keeping such watch for trains, was to warn persons about to enter

upon such crossing of the danger in so doing, and thereby save appellant from loss by reason of such agreement. We observe no other fact, which would so far supplement the circumstance cited, as to warrant the inference necessary to support appellee's contention that the decedent, at the time he received his injuries, was under the control of appellant. To hold otherwise would violate the well-settled rule with reference to the right of a court or jury, to draw inferences from facts proven. *Russell* v. *Scharfe* (1921), 76 Ind. App. 191, 130 N. E. 437; *Pioneer Coal Co.* v. *Hardesty* (1921), 77 Ind. App. 205, 133 N. E. 398.

It only remains to be seen if the said Nick Spirakis falls within the first exception stated above. The undisputed evidence clearly shows that at the time 3. he received his fatal injuries he had quit his work, and was not upon appellant's premises, or upon the private crossing, which had been granted for its use, and the use of its servants, but was at a distance of ten feet therefrom, on the premises of the New York Central Railroad Company. Such evidence shows further that for ten or fifteen minutes prior thereto said decedent had not been on the premises of appellant, or upon said private crossing, but during said time had been waiting in the station of said railroad company, in order to take passage upon one of its trains, which he was trying to reach for such purpose when he was struck and killed. It thus appears that the relation of master and servant existing between appellant and said decedent had been suspended, when the latter met his death, and that the relation of carrier and passenger had been assumed, between him and said railroad company prior thereto. *Rourke's Case* (1920), 237 Mass. 360, 129 N. E. 603, 13 A. L. R. 546; *Pere Marquette R. Co.* v. *Strange* (1908), 171 Ind. 160, 84 N. E. 819, 85 N. E. 1026, 20 L. R. A. (N.

S.) 1041. The same condition, as to the relationship between said decedent and appellant, and between him and the railroad company, would have existed had he regained a position on said private crossing before he was killed, as, under the circumstances shown, he would have been using such crossing, not as a servant of appellant, but as a passenger of said railroad company. This is in harmony with the well-settled rule stated and applied in the case last cited, as follows:

"The relation of carrier and passenger commences when a person, with the good-faith intention of taking passage, with the consent of the carrier, express or implied, assumes a situation to avail himself of the facilities for transportation which the carrier offers. Appellee, having entered upon appellant's premises for the purpose of taking passage on a train in due course, and purchased a ticket entitling him to transportation between designated points, was, while approaching the train upon which he was to be carried and by which he was injured, clearly a passenger."

We conclude that said decedent, at the time he sustained his injuries, was not within said first exception, and hence the general rule stated above is applicable.

Appellees have cited a number of facts, shown by the stipulation, with reference to the location of the crossing and station in question, the means of access to the same, the agreement under which they were established and maintained, the purposes for which they were used, the presence of a watchman and the like; but none of these are sufficient to overcome the irresistible conclusion that at the time said decedent received his fatal injuries his relation with appellant as an employe had been suspended, and the relation of passenger with the New York Central Railroad Company had been assumed. This being true, the finding that said decedent, while in the employ of appellant, "received a personal injury by

an accident arising out of and in the course of his employment, resulting in his death," is not sustained by the evidence. As such a finding is essential to appellees' right to compensation, the award is reversed for further proceedings consistent with this opinion.