DOROTHY JOHNSON GALLIENNE

*v.*

BECKER BROTHERS SHOE CO.

*McLane, Davis & Carleton* and *George F. Nelson* (*Mr. Nelson* orally), for the plaintiff.

*Hughes & Burns* and *Charles F. Hartnett* (*Mr. Hartnett* orally), for the defendant.

WOODBURY, J. The plaintiff's employment by the defendant as a "fancy stitcher" brought her in proximity to power driven machinery in a factory where five or more persons were engaged in manual or mechanical labor. This is not disputed. She was, therefore, engaged in an employment described in P. L., c. 178, s. 1, cl. II, and it follows that she is entitled to compensation "whenever and wherever" she was injured provided her injury arose "out of and in the course of the employment." *White* v. *Company*, 85 N. H. 543, 544.

The defendant contends that the plaintiff's injury cannot be found to have arisen "out of and in the course of the employment" because it occurred upon private property over which her employer had no control, and because it occurred, not at a time when the plaintiff was working at her machine, but when she was returning to her work after having been engaged during the noon hour upon business of her own. These contentions are not supported by the authorities.

The rule applicable to the facts of this case was stated by the Supreme Court of the United States in *Bountiful Brick Co.* v. *Giles*, 276 U. S. 154, 158, (a case in which the employee was killed when going to his work across a railroad right of way), in the following language: "And employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done. If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises,

the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance. In other words, the employment may begin in point of time before the work is entered upon and in point of space before the place where the work is to be done is reached. Probably, as a general rule, employment may be said to begin when the employee reaches the entrance of the employer's premises where the work is to be done; but it is clear that in some cases the rule extends to include adjacent premises used by the employee as a means of ingress and egress with the express or implied consent of the employer." ·

This statement is in harmony with the authorities elsewhere. *Sundine's* Case, 218 Mass. 1; *Latter's* Case, 238 Mass. 326; *Jeffries* v. *Company*, 83 Ind. App. 159; *John Stewart and Son, Limited* v. *Longhurst*, [1917] A. C. 249; *Procaccino* v. *E. Horton & Sons*, 95 Conn. 408; *Ross* v. *Howieson*, 232 N. Y. 604; *Judson M'f'g. Co.* v. *Commission*, 181 Cal. 300.

In all of the cases cited above the employee was injured while either going to or coming from his work over private property not in his employer's control. In a majority of them the argument was made, as it was in the case at bar, that this lack of control over the property where the injury was suffered was fatal to the employee's right to recover under the workmen's compensation act. In each instance, however, this argument was expressly repudiated, the test established being whether or not the employee was injured while using a way of ingress or egress which the employer either contemplated his employees would use or one which the employee used with either the express or implied consent of the master.

We do not now need to consider whether contemplation or consent is the true basis for the rule, because, in the case before us, it is clear that the defendant not only contemplated that the employees would use the footpath, but also that it consented to such use, and consent is the word of narrower implication. The evidence conclusively establishes that the defendant's local managing officer had actual knowledge of the use made of the footpath, that he did not object to it, and that he even posted a "checker" upon the bridge where the path crosses the canal, for the purpose of examining the employees' passes.

Furthermore, the court found that the defendant and its lessor "understood and agreed" that the former's employees "were to have the use of the footpath as a right-of-way to and from their work

in the factory." This finding is supported by the evidence of the oral lease. That understanding will not bear a construction so limited as to exclude from its terms the right of the lessee and its employees to use the only "conveniently located," usual and "readily accessible" means of approach by pedestrians to the leased premises. *Latter's* Case, *supra*. It is material because, having understood that the employees had a right to use the path, the defendant must not only have contemplated, but also consented that it would, in fact, be so used.

The cases principally relied upon by the defendant (*Hills* v. *Blair*, 182 Mich. 20; *McInerny* v. *Railroad*, 225 N. Y. 130; *Haggard's* Case, 234 Mass. 330; *Fumiciello's* Case, 219 Mass. 488) are to be distinguished upon the ground that in them the employee was not using a way which his employer either contemplated or expected that he would use.

In *Bell's* ,Case 238 Mass. 46, also cited by the defendant, the employee was killed by a train on a railroad right of way while crossing it on his way home. In spite of the fact that he was using the safest and usual means of egress from his employer's plant, compensation was denied. The result reached in this case is not in accord with that arrived at in *Bountiful Brick Co.* v. *Giles, supra; Jeffries* v. *Company, supra; Procaccino* v. *E. Horton & Sons, supra; Judson M'f'g. Co.* v. *Commission, supra;* but its reasoning is not at variance with those cases. The Massachusetts court in *Bell's* Case merely declined to apply the usual rule, the rule which it had adopted in *Sundine's* Case and *Latter's* Case, to the situation presented when the employee received his injury upon a railroad right of way. Whether the Massachusetts court should be followed in so limiting the rule does not invite our consideration at this time because in the case at bar the plaintiff was not injured upon railroad property.

As a matter of law it is unimportant whether there was one, or more than one, means of entrance to the defendant's factory. Had the path upon which the plaintiff was injured been the only means of entrance, it would conclusively establish, as a matter of fact, that it was a way which the defendant both contemplated and consented that its employees would use (*Procaccino* v. *E. Horton & Sons, supra*), but no argument is required to demonstrate the unsoundness of the converse of this proposition. The fact of the existence of alternate exits or entrances has some bearing upon the issue of whether or not the employee when injured was using an authorized route, it does not, of course, prove that a route used was an unauthorized one. *Bountiful Brick Co.* v. *Giles, supra; Latter's* Case, *supra*.

It is of no consequence that the plaintiff's time was her own during the noon hour, and that, with the defendant's acquiescence, she had then gone outside the factory in pursuit of her own private affairs. Such is always the case when the employee is going back and forth between his home and his work. The question is not what the employee is about to do, or has just been doing, but whether or not at the time of injury he is within the "zone of his employment." *Procaccino* v. *E. Horton & Sons, supra; Kantor* v. *Company*, 236 App. Div. 749.

Neither is it important that the plaintiff was employed at "piece work." *Blovelt* v. *Sawyer*, [1904] 1 K. B. 271. This fact related to the method of computation of her wages, it did not affect any of the other incidents of her employment. She was due at her machine at one o'clock and she was injured shortly before that time while on her way there over a route which her employer contemplated and consented that she should take and after she had left the public highway. This, on all the authorities cited above, is sufficient to warrant the finding that her injury was one arising out of and in the course of her employment.

The defendant next contends that, although the plaintiff scratched her knees when she fell, there is no evidence that this minor injury resulted in the ankylosed right hip and loss of full motion in the right knee which produced her subsequent disability.

One of the plaintiff's medical experts testified that when the plaintiff fell to her knees "The weight of the body would be transmitted to the hip through the knee"; and further: "Well the theory is that there was some trauma to the hip joint in order to cause either a hemorrhage or an infection, that is, of the synovial fluid. That would be the exciting cause. The secondary cause would be some infection getting into the system circulating and starting up the corona of infection on this joint." He also testified: "Well eventually what happened the cartilage was destroyed but that was not done at the injury. I think the injury was a primary cause which led to some bacteria from setting up in the coronary and destroying the articular surface between the two bones."

The above evidence, coupled with the testimony of the plaintiff that she began to suffer pain in her hip a few days after the fall, is sufficient to show that her later hip condition was caused by that fall.

The defendant's argument that the finding of total disability is based upon guess or conjecture because there is no evidence that the bacteria which destroyed the cartilage at the hip entered the system through the scratches upon the plaintiff's knees, is also with-

out merit. It is immaterial whether the bacteria were present in the plaintiff's system when she fell or whether they entered at that time. It is enough if the plaintiff's fall caused the bacteria to become active in producing the injurious result. *Gagne* v. *Company*, 87 N. H. 163; *Thomson* v. *Company*, 86 N. H. 436, 437, and cases cited.

The defendant's next contention is that the court erred in computing the amount of the award of compensation. Its position is that the finding that the plaintiff "will be incapacitated for more than three hundred weeks" is not supported by the evidence.

As the defendant admits, the word "incapacitated," as used in the findings, must be taken to mean without capacity to earn. But this finding is not necessarily negatived by the further finding that the plaintiff received some wages, seventy-five dollars and one meal a day over a period of four or five months while doing housework for her brother-in-law, after her injury. Wages actually earned after injury may or may not, depending upon the circumstances, show actual capacity to earn. Such earnings are merely one of the items of evidence to be considered on this issue (*Peak* v. *Company*, 87 N. H. 350), and considering the plaintiff's testimony as to her pain and suffering, the medical testimony as to her physical condition, and the circumstances under which the above wages were paid, we cannot say that the finding of incapacity was unreasonable.

The situation presented is analogous to that considered in *Canney* v. *Insurance Co.*, ante, 325, in that it could be found that the work performed by the plaintiff after her injury was "of a 'merely trifling character.'"

The testimony of one of the medical experts to the effect that some persons, whose physical condition is comparable to that of the plaintiff, can earn their living, does not require acceptance. The plaintiff testified that after injury, except for the housework mentioned above, she could not work at any gainful employment, and the fact that she did not attempt to do so goes only to the weight to be accorded to her testimony on this point. The court is entitled to accept or reject the testimony of the medical expert in his discretion, and his tacit rejection of it is not exceptionable. Moreover, this testimony did not take into consideration the plaintiff's education, training, temperament and mental capacity to adapt herself to other forms of labor than that to which she was accustomed, and, in consequence, it loses persuasive force.

In view of the foregoing testimony, the opinion of the medical expert to the effect that the plaintiff's condition "will remain the

same permanently" is sufficient to sustain the finding that the plaintiff's incapacity will, more probably than otherwise, last for at least three hundred weeks.

Whether or not the court was correct in deducting the wages actually earned from his award for total disability for the maximum time allowed by the statute does not require consideration. The reason for this is that the only person prejudiced by that ruling was the plaintiff, and she has taken no exception to this method of computation.

Several of the defendant's exceptions to the admission of evidence relate to the question of notice to the employer of the injury which the plaintiff sustained. All exceptions taken by the defendant to the findings of the court on this issue of notice were waived by it at oral argument, and so exceptions to evidence introduced on this issue do not require consideration. Other of its exceptions relate to the materiality of testimony introduced for the purpose of showing that the defendant, either expressly or by implication, consented to the use of the footpath by the plaintiff and its other employees. The discussion at the beginning of this opinion shows that such testimony is material and so these exceptions are disposed of. Further discussion of them at this point is unnecessary. Still other exceptions relate to questions addressed to the defendant's general manager concerning the plaintiff's physical condition before her injury. These questions were immaterial, but we fail to see how their answers prejudiced the defendant. This lack of prejudice is clear because of the fact that the witness testified that he had no actual knowledge of the matter. *State* v. *Harmon, ante,* 267.

One of the plaintiff's co-employees was allowed to give her opinion that the vehicular route to the defendant's factory was unsafe for pedestrians. This evidence has some materiality in that it tends to show that the footpath was a route which the defendant must have contemplated that pedestrians would use, and is, therefore, admissible if the court found that such an opinion would be helpful to him. *Goldstein* v. *Corporation,* 86 N. H. 402, 404, and cases cited. Whether or not it would be helpful presents an issue of fact for the court below which has been passed upon adversely to the defendant. Under the circumstances we fail to discern any issue of law raised by this exception.

The plaintiff was allowed to put in evidence bills for the medical care which she received after thirty days after injury. These bills were introduced "to show the expenses since that time, not for the

purpose of getting the money in compensation but for the purpose of showing treatment, the extent of the treatment and as bearing on incapacity and pain and suffering and inability to work." Objection was made to them for the purposes for which they were offered, but not upon any other ground, and the court ruled: "I'll admit them for the present and I'll rule on that question later." The defendant excepted. It does not appear that the court did rule on their admissibility later or that he used them in arriving at his findings. Under these circumstances it is problematical whether the court did, in fact, use the bills for the purpose for which they were offered, but even if he did, they have some bearing upon an issue in the case and were properly received. The question whether or not the bills were for necessary treatment, whether they were properly authenticated, or whether they were excessive and so prejudicial, were not raised by the exception and so need not be considered.

*Exceptions overruled.*

PAGE, J., was absent: the others concurred.