Rockingham,  } No. 3130.
Jan. 2, 1940.

MARK SNOOK *v.* PORTSMOUTH.

442

*William H. Sleeper* (by brief and orally), for the plaintiff.

*Hughes & Burns*, and *Walter A. Calderwood, Jr.* (*Mr. Calderwood* orally), for the defendant.

BRANCH, J. In support of the defendant's contention that its motion to dismiss the petition should have been granted, it is argued that the plaintiff was not engaged in "a type of employment which was contemplated by Section 1 of this Act." In support of this argument it is asserted first, that there is no evidence that five or more persons were employed by the defendant, and second, that "The work is not inherently dangerous to the life or limb of the workman, nor is there danger of injury by fellow servants great or difficult to avoid." Neither of these arguments merits more than passing notice.

So far as the first of these assertions is material the answer is well indicated in the plaintiff's brief. The evidence clearly disclosed the fact that the particular crew with which the plaintiff worked consisted of five men.

The fact that the plaintiff's work did not fall within one of the classifications of the original act (P. L., c. 178, s. 1) is clearly immaterial in view of the amendment of 1937, which provides that any city "may accept for designated or for all workmen in its employ, the provisions of this chapter . . . and it shall thereafter be liable to such workmen for any injury arising out of or in the course of their employment . . .". Laws 1937, c. 147, s. 1. By virtue of this amendment the City was authorized to accept the provisions of the act "for all workmen in its employ" without reference to the perils of the work in which they were engaged and it is, therefore, unnecessary to inquire in a given case whether the injured workman would have come within any of the classifications specified in the first section of the act before amendment.

The defendant also argues that at the time its motion to dismiss was made "there was no evidence that the respondent had accepted the provisions of this act." It is true that when the defendant's motion was made, no formal proof that the City had accepted the provisions of the act had been presented. It is also true that the question had not been specifically raised by the defendant. The complete answer to the defendant's argument is, that after the evidence was closed, the court permitted the case to be reopened and received evidence that the city had accepted the provisions of the act, which amply justified the conclusion that "the City of Portsmouth had accepted for members of the Highway Department . . . the provisions of the Workmen's Compensation Act." It has long been understood in this state that, after a case has been closed, the court may, in its discretion, reopen it for introduction of ad-

ditional testimony and that the exercise of its discretion will not be revised by this court. *Wells* v. *Burbank*, 17 N. H. 393, 412.

The defendant further argues that the evidence does not sustain the finding of the court that the plaintiff was, at the time of the accident, "within a reasonable margin of time and space necessary to be used in passing to and from the place where the work was to be done." The evidence not only supports this finding but would support findings much more favorable to the plaintiff's position. The accident happened upon Congress Street, which was the street upon which the plaintiff was required to work, at a point within 250 feet of the place where his work ordinarily commenced and at a point where he would actually have been sweeping within a short time after the work started. The court found that it happened at a time within twenty minutes of 5 o'clock, the usual hour for commencing work, although there was testimony giving the time as ten minutes of five. Under these circumstances the propriety of the court's finding that "the accident arose out of and in the course of the workman's employment" is not open to serious question. *Gallienne* v. *Company*, 88 N. H. 375. It follows from the preceding discussion that defendant's motion to dismiss the petition was properly denied.

The next position taken by the defendant is that "The respondent has been prejudiced by want, defect or inaccuracy of notice." Upon this point the court found specifically that "The employer has not been prejudiced by any want, defect, or inaccuracy of a notice." The burden of proving that it suffered prejudice because of the plaintiff's failure to give notice of his injury, rested upon the defendant (P. L., c. 178, s. 16) and we find in the record no testimony which compels the conclusion that the trial court erred in its finding.

The defendant also takes the position that "The weekly rate of compensation was incorrectly computed." From the findings of the court it appears that compensation was "computed according to the city payroll records at the minimum rate of $7. per week." Reference is here made to Laws of 1933, c. 153, s. 1, which provides that "compensation as provided for in this section shall not, in any case, be less than $7. per week." It is plain that the court accurately followed the mandate of the statute and applied the proper rate in determining the total amount of compensation.

The defendant also further argues that "The duration of compensation was improperly computed." The trial court found that "If it had not been for the accident, the petitioner would probably

have been able to do his work or similar work for some three years longer." The statute provides that no such payment shall be due or payable for any time prior to the giving of the notice required by section 15. P. L., c. 178, s. 24. The defendant argues that notice of plaintiff's accident was not given until 17 weeks after it occurred and that, for this reason, "a deduction of seventeen weeks from the total allowed" should have been made. In making this argument the defendant obviously assumes that the language of the court above quoted should be construed as a finding that the plaintiff would have been able to do his work for exactly three years after the date of the accident. This is not a necessary interpretation of the words "for some three years longer," and if the award allowed compensation for a total of 156 weeks, as it apparently did, it cannot be said as a matter of law that the compensation was allowed for an excessive period.

It appeared that the truck which caused the plaintiff's injury was driven by one Googins and at the close of the plaintiff's testimony the following proceedings took place: *"Mr. Burns:* I call on Mr. Sleeper at this time to produce the release which was given to Mr. Googins in this case to show the consideration which was paid. *Court:* What bearing has it on this case? *Mr. Burns:* Because of the amount that he received may be deductible from the amount, if any, that may be awarded him as compensation. . . . *Court:* I don't think I'll ask him to produce it now if he does not want to. I'll rule on it later. *Mr. Burns:* May we have an exception to the ruling of the Court in failing to order counsel for the plaintiff to produce it at this time? *Court:* Yes." The ruling of the court was correct. The statute provides in detail the manner in which the amount of compensation shall be determined (P. L., c. 178, ss. 19-24) and no deductions from the amount payable by the employer is authorized on account of payments received from any other source. Whether Googins, in an action against him at common law, would have been entitled to have the amount of compensation received from the city deducted from the damages assessed against him, is a question in regard to which no opinion is expressed.

Michael F. Cronin, one of the Street Commissioners of the City of Portsmouth, called as a witness by the plaintiff, testified, subject to the defendant's exception, as follows: "Q. What was the practice followed in the summer of 1938 in the spring and summer of 1938 with reference to the time of day at which the street cleaning would be done there on Congress Street? . . . A. From the recommendation

of the Superintendent he wanted to start as early as he possibly could in the summer time so to get through sweeping up before the automobiles would park at the curb and we left that in his discretion, we told him to go ahead and make arrangements to start. Then of course they stood, when they all come and assembled there they went to work. That's as true facts that I know. When the four men got there they went to work." The same witness testified as follows: "*The Court:* Did you see the men go to work any of the mornings? *Witness:* No. I never was out as early as that." On the basis of this last answer the defendant now argues that all the testimony of the witness as to the time when the street cleaners went to work must have been hearsay and was improperly admitted. The testimony above quoted to the effect that the time when work should actually start was left to the discretion of the superintendent, was obviously a matter within the knowledge of the witness as a public official and cannot be classed as hearsay. We think that the remainder of his testimony should, in the same way, be regarded as a statement of the system adopted by the Commission for the organization and efficient conduct of the work, and assumed to have been followed in practice by the subordinate members of the department. As such it was not obnoxious to the hearsay rule.

The defendant further argues as follows: "The testimony of Mr. Brooks concerning the time at which employees went to work, was inadmissible as it was contrary to the record he was required to keep and did keep." No known rule of evidence is invoked by this argument and the exception to which it relates is, therefore, overruled.

No reason for disturbing the conclusions of the trial court having been discovered in the record, it is ordered that there be a

*Decree for the plaintiff.*

All concurred.