Compensation Appeals Board
No. 94-635

APPEAL OF JAMES COOPER

(New Hampshire Compensation Appeals Board)

July 11, 1996

*McLane, Graf, Raulerson & Middleton, P.A.*, of Portsmouth (*J. Kirk Trombley* on the brief and orally), for the claimant.

*Sulloway & Hollis*, of Concord (*James E. Owers* and *Kerry M. Casey* on the brief, and *Mr. Owers* orally), for the respondents, W.R. Grace & Company and CNA Insurance Companies, Inc.

HORTON, J. The claimant, James Cooper, appeals the decision of the compensation appeals board (board) denying him compensation for an injury sustained while playing softball. He argues that the board erred by finding that the injury was not the result of a risk

created by his employment. He also argues that the board violated his right to due process under the New Hampshire and United States Constitutions by reversing its prior decision without a hearing and that the board acted outside its statutory authority by summarily reversing its prior decision. We reverse and remand.

The claimant injured his right knee on July 18, 1991, while playing first base for the Hampshire Chemical softball team. Hampshire Chemical is a division of W.R. Grace & Company (W.R. Grace), the claimant's employer at the time of the injury; W.R. Grace and CNA Insurance Companies are the respondents in this case. The claimant received extensive medical care for his injury, including four surgeries. In October 1993, a department of labor hearing officer determined that the claimant's injury arose out of and in the course of his employment and that he was entitled to workers' compensation benefits. W.R. Grace appealed, and in May 1994 the board affirmed the decision of the hearing officer. In reaching its decision, the board applied the compensability test outlined in *Murphy v. Town of Atkinson*, 128 N.H. 641, 645–46, 517 A.2d 1170, 1172–73 (1986). W.R. Grace moved for rehearing, relying on our holding in *Anheuser-Busch v. Pelletier*, 138 N.H. 456, 458–59, 641 A.2d 1018, 1020–21 (1994), in which we clarified part of the *Murphy* test. In August 1994, without holding another hearing, the board reversed its determination of the claimant's compensability on the ground that the first prong of the *Murphy* test, as clarified by *Pelletier*, had not been met. The claimant appeals.

We will not set aside the decision of the board absent an error of law or unless we are satisfied, by a clear preponderance of the evidence before us, that the board's decision is unjust or unreasonable. RSA 541:13 (1974); *see Appeal of Kehoe*, 139 N.H. 24, 27, 648 A.2d 472, 474 (1994).

The claimant argues that in *Pelletier* we merely affirmed and clarified the *Murphy* compensability test, and, therefore, because there was no change in the law, the board erroneously reversed its earlier decision. In *Murphy*, we established a test "for determining whether peripheral or ancillary activities are within the scope of employment" and thus within the scope of workers' compensation. *Murphy*, 128 N.H. at 645, 517 A.2d at 1172. To succeed,

a claimant must prove (1) that the injury arose out of employment by demonstrating that it resulted from a risk created by the employment, and (2) that the injury arose in the course of employment by demonstrating that (A) it occurred within the boundaries of time and space created by the terms of employment, and (B) it occurred in the

> performance of an activity related to employment, which may include a personal activity if reasonably expected and not forbidden, or an activity of mutual benefit to employer and employee.

*Id.* at 645–46, 517 A.2d at 1172–73 (citations omitted). *Murphy* involved a volunteer firefighter who was injured while playing softball at a Firefighter's Association picnic. We held, *inter alia,* that the firefighter's injury was not within a risk created by his employment as a firefighter because "[a]t the time he was hurt, the plaintiff was not engaged in firefighting, was not on the employer's premises, was not subject to the employer's control, was not expected by the employer to be engaging in the game and was not injured by or while using the employer's equipment." *Id.* at 646, 517 A.2d at 1173.

In *Pelletier,* we restated the *Murphy* test and found that the claimant failed to prove the first prong of the test: "that his injury was a risk that arose from, or was created by, his employment with the company." *Pelletier,* 138 N.H. at 458–59, 641 A.2d at 1020. *Pelletier* involved an employee who was injured during a company bowling league match. We found that at the time of his injury, the claimant was not on company property, was not engaged in any activities related to brewing beer, was not within his employer's control, was not required by his employer to be bowling, would have experienced no penalty for refusing to participate in the bowling league, and was not injured by or while using the company's equipment. *Id.* at 459, 641 A.2d at 1020. In reaching our decision, we noted that the facts in *Pelletier* were slightly different from those in *Murphy. Id.* In *Pelletier,* the company encouraged participation in sports by providing bulletin board space for sign-up lists, bowling schedules, and notices, and by making a $2000 donation to the bowling league. *Id.* Nevertheless, we held "that this encouragement and sponsorship, by itself, does not create a sufficient causal connection between the defendant's employment and his risk of injury while bowling." *Id.* at 459, 641 A.2d at 1020–21.

In the case before us, we are again presented with the opportunity to interpret the first prong of the *Murphy* test. We note that the facts in this case present a greater departure from those in *Murphy* than did the facts in *Pelletier.* Here, W.R. Grace had extensive involvement in the activities of the company softball team. During the claimant's employment interview, softball and the company's team were discussed. A budget for team expenses was submitted each year to the W.R. Grace plant manager. W.R. Grace paid nearly all of the team's expenses, including league fees, New Hampshire

and out-of-state tournament fees, uniforms, bats, gloves, weights, catcher's equipment and other items, air fare to and from tournaments throughout the United States, rental cars, hotel accommodations, meals and drinks after some games, advertisements in game programs, and season-end awards dinners and ceremonies. W.R. Grace incurred significant additional costs, including overtime pay for workers who filled in for members of the team absent because of commitments to the league schedule.

In its prior decision, the board found that the "pervasive involvement and support of the company for the softball team set participation in that activity apart from the nature of the softball game described in *Murphy*." The board also found that the team was part of the "cultural climate" of the company, that it "strengthened and boosted" the morale of employees at the company, and that its activities were "reasonably expected" and "a [natural] incident of employment."

In its later decision, from which this appeal arises, the board reversed itself, relying on our ruling in *Pelletier*. The board concluded that the first prong of the *Murphy* test, as clarified by *Pelletier*, had not been met. We disagree. The level of company encouragement and sponsorship highlighted by the board's initial ruling made injury at a company softball team game "a risk created by the employment." *Murphy*, 128 N.H. at 645, 517 A.2d at 1172. At the time of his injury the claimant was using the company's equipment. More importantly, however, adjustments were made to the claimant's work schedule to accommodate softball practices and games, and the claimant's pay was never docked for being away from his job because of softball, even when practices or games occurred during his regular work schedule. These facts, coupled with the company's extensive involvement with the team and the company's practice of paying overtime wages to those employees who filled in for players unable to work because of the team's schedule, set this case apart from *Murphy* and *Pelletier*. Contrary to the board's interpretation of *Pelletier*, our holding in that case did not preclude the possibility of employer encouragement and sponsorship satisfying the first prong of *Murphy*. *Cf.* 1A A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 22.24(c), (d), (f) (1995) (standing alone, the furnishing of financial support, athletic equipment, prizes, etc. by the employer ordinarily does not satisfy the burden of proof, but outright employer initiative such that the activity is part of an employment recreational program may be enough to find an adequate employment connection). That threshold of risk has been crossed here. As the board found in its initial

decision, the team was part of the "cultural climate and almost institutionalized as an established part of company life for well over 15 years." Because we reverse on this ground, we need not consider the claimant's other arguments.

*Reversed and remanded.*

All concurred.