Compensation Appeals Board
No. 95-425

APPEAL OF ESTATE OF JAMES BALAMOTIS

(New Hampshire Compensation Appeals Board)

November 21, 1996

Gormley, Mayer & Gormley, P.C., of Nashua (Arthur O. Gormley, III on the brief and orally), for the petitioner.

Devine, Millimet & Branch, P.A., of Manchester (Eric G. Falkenham and John E. Friberg, Jr. on the brief, and Mr. Falkenham orally), for the respondent, Liberty Mutual Insurance Co.

HORTON, J. The petitioner, the estate of James Balamotis, appeals the decision of the New Hampshire Compensation Appeals Board (board) denying it compensation for the decedent's fatal injury sustained while playing volleyball. We reverse and remand.

The decedent, a field service engineer employed by Digital Equipment Corporation (DEC), played volleyball with his co-workers several times per week during his lunch-hour break at DEC. Although the decedent's volleyball game was not among the several DEC-sponsored recreational activities available to employees, it was not forbidden. On June 3, 1992, the decedent died during a lunch-time volleyball game at DEC, probably as the result of an aggravated heart condition. Without determining the cause of death, the board denied compensation because the decedent's death did not arise out of and in the course of his employment. See RSA 281-A:2, XI (Supp. 1995); Murphy v. Town of Atkinson, 128 N.H. 641, 645-46,

517 A.2d 1170, 1172-73 (1986). The petitioner's motion for rehearing was denied. *See* RSA 541:3 (Supp. 1995). The petitioner appeals. *See* RSA 541:6 (1974).

■ We will not set aside the decision of the board absent an error of law or unless we are satisfied, by a clear preponderance of the evidence before us, that the board's decision is unjust or unreasonable. RSA 541:13 (1974); *see Appeal of Kehoe*, 139 N.H. 24, 27, 648 A.2d 472, 474 (1994).

■ Our holding here, together with our recent decision in *Appeal of Cooper*, 141 N.H. 184, 679 A.2d 586 (1996), clarifies the contours of one area of workers' compensation law: whether injuries sustained while engaged in peripheral or ancillary activities, in this case recreational or social activities, are within the scope of employment and thus compensable. *See Murphy*, 128 N.H. at 645, 517 A.2d at 1172. Our analysis begins with a familiar test. To succeed,

> a claimant must prove (1) that the injury arose out of employment by demonstrating that it resulted from a risk created by the employment; and (2) that the injury arose in the course of employment by demonstrating that (A) it occurred within the boundaries of time and space created by the terms of employment; and (B) it occurred in the performance of an activity related to employment, which may include a personal activity if reasonably expected and not forbidden, or an activity of mutual benefit to employer and employee.

*Id.* at 645-46, 517 A.2d at 1172-73 (citations omitted). "This requirement, however, is to be construed liberally in order to give the broadest reasonable effect to the remedial purpose of the workers' compensation law." *Whittemore v. Sullivan Cty. Homemaker's Aid Serv.*, 129 N.H. 432, 435, 529 A.2d 919, 920-21 (1987). The petitioner argues that the board misapplied the *Murphy* test.

In this case, whether the risk of injury was created by the employment is dependent on the fact that the game took place on DEC premises during a work break. *See* 1A A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 22.11, at 5-91 to 5-98 (1995). Once an activity has been placed in physical contact with the employment environment, "the exact nature and purpose of the activity itself does not have to bear the whole load of establishing work connection, and consequently the employment-connection of that nature and purpose does not have to be as conspicuous as it otherwise might." *Id.* at 5-91.

■ We distinguish the facts of this case from those involving off-premises, after-hours activities. In those cases, satisfaction of *Murphy's* first prong required some additional factor or factors to tie the activity to the employment. *See Cooper*, 141 N.H. at 187-88, 679 A.2d at 588-89; *Anheuser-Busch v. Pelletier*, 138 N.H. 456, 459, 641 A.2d 1018, 1020 (1994); *Murphy*, 128 N.H. at 646, 517 A.2d at 1173. Accidents sustained while an employee is engaged in personal activities at work, in contrast, "arise as much out of the employment as when he is actually doing the work for which he is hired." *Whitham v. Gellis*, 91 N.H. 226, 227, 16 A.2d 703, 704 (1940). "The risks of injury incurred in the crowded contacts of the factory through the acts of fellow-workmen, are not measured by the tendency of such acts to serve the master's business. Many things that have no such tendency are done by workmen every day." *Maltais v. Assurance Society*, 93 N.H. 237, 240, 40 A.2d 837, 839 (1944) (quotation omitted); *see also Maheux v. Cove-Craft Co.*, 103 N.H. 71, 74-75, 164 A.2d 574, 576 (1960).

> Whatever workmen are commonly understood to do when associated together in a shop or factory is part and parcel of the working environment and therefore one of the perils of the service. . . . The claimant was injured, not merely while he was [at work], but because he was [at work], in touch with associations and conditions inseparable from [working] life. *The risks of such associations and conditions were risks of the employment.*

*Maltais*, 93 N.H. at 241, 40 A.2d at 840 (quotations and citation omitted) (emphasis added). We hold that, in general, on-premises recreational activities conducted during the work day arise out of the employment. *See* 1A LARSON, *supra* § 22.11, at 5-91 to 5-92.

The injury also arose in the course of the decedent's employment. Applying the standards of *Murphy*, we note that the decedent's death occurred within the boundaries of time and space created by the terms of his employment; he died during a break in his regular work day at his place of employment. The board held that in order to arise in the course of employment, an activity must be integrally related to the object of the employment relationship. The board's analysis is misplaced. It properly pointed out that "[t]ime and space criteria are not fixed within work hours or a specific work place. [Employment] may be anywhere and at anytime." *See Murphy*, 128 N.H. at 646, 517 A.2d at 1173. But the additional requirement that the expansion of the boundaries of time and space depends on "a call or a requirement to perform some activity integrally related to the object of the employment relationship," *id.*, applies to activities

outside of normal work hours or away from the normal work site. *See Heinz v. Concord Union School Dist.*, 117 N.H. 214, 218-19, 371. A.2d 1161, 1164 (1977); *cf. Cook v. Wickson Trucking Co.*, 135 N.H. 150, 154, 600 A.2d 918, 920 (1991) (ordinary perils of travel between home and work not considered hazards of employment; thus, injuries arising from such travel are noncompensable); *Donnelley v. Kearsarge Tel. Co.*, 121 N.H. 237, 241, 428 A.2d 888, 891 (1981) (inside employees "are usually covered for workmen's compensation benefits between the time they check in and out unless special circumstances exist").

■ Thus, the additional integral relationship nexus is relevant where "time and space criteria cannot be applied in a conventional manner," *Whittemore*, 129 N.H. at 436, 529 A.2d at 922, such as "when employment is subject to call, consisting of service wherever and whenever needed," *Murphy*, 128 N.H. at 646, 517 A.2d at 1173.

■ The prerequisites to recovery, however, are not completely devoid of an employment nexus. The determination of whether the injury arose in the course of the employment also requires that the activity be related to the employment. *See id.* at 645, 517 A.2d at 1173. But we have specifically included in the relationship require-ment an allowance for "personal activity if reasonably expected and not forbidden, or an activity of mutual benefit to employer and employee." *Id.* (citations omitted). We have stated that the law "must recognize [that workers] require and habitually take some brief respite at times during the work as opportunity offers; and it must also recognize the fact that such a respite, if only of the ordinary and usual nature, cannot rightly be called a leaving of the employment." *Perkins v. Company*, 91 N.H. 211, 212, 16 A.2d 700, 702 (1940) (quotation omitted). We have also recognized that conduct "of a personal nature reasonably to be undertaken and not expressly forbidden is as much in the course of the employment as when . . . actually performing the work of the employment . . . ." *Whitham*, 91 N.H. at 227, 16 A.2d at 704.

■ In this case, the decedent had played lunch-time volleyball at DEC several times per week for at least two years. The games were not forbidden, and the decedent's supervisor knew they were taking place. "The controlling issue is whether the activity is reasonably expectable, so as to be an incident of the employment, and thus in essence a part of it." *Maheux*, 103 N.H. at 74, 164 A.2d at 576. We find that the decedent's injury arose in the course of his employ-ment.

Although the board found that the decedent "probably died of a malignant arrhythmia," a preexisting condition, it was never more

than assumed that the condition "was significantly aggravated by the volleyball game." *See* RSA 281-A:2, XI. Accordingly, the decision of the board is reversed and the claimant's case is remanded for a determination of causation. *See Appeal of Briggs*, 138 N.H. 623, 628-29, 645 A.2d 655, 659 (1994).

*Reversed and remanded.*

All concurred.