Hall v. New England Business         CV-03-083-M   04/29/03
UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Tashia Hall,
    Plaintiff

    v.                            Civil No. 03-83-M
                                     Opinion No. 2003 DNH 073
New England Business Service, Inc.,
    Defendant


**O R D E R**


    Tashia Hall brings this action against her former employer,
New England Business Service, Inc. ("NEBS"), claiming that NEBS's
negligence proximately caused her to be attacked and abducted by
another NEBS employee. She seeks damages for injuries she
sustained as a result of that assault. NEBS moves to dismiss
both counts in Hall's complaint, on grounds that, as a matter of
law, they do not state viable claims. See Fed. R. Civ. P.
12(b)(6). Hall objects.


**Standard of Review**

    When ruling on a motion to dismiss under Fed. R. Civ. P.
12(b)(6), the court must "accept as true the well-pleaded factual
allegations of the complaint, draw all reasonable inferences

therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." Martin v. Applied Cellular Tech., Inc., 284 F.3d 1, 6 (1st Cir. 2002). Dismissal is appropriate only if "it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). See also Gorski v. N.H. Dept. of Corrections, 290 F.3d 466, 472 (1st Cir. 2002) ("The issue presently before us, however, is not what the plaintiff is required ultimately to prove in order to prevail on her claim, but rather what she is required to plead in order to be permitted to develop her case for eventual adjudication on the merits.") (emphasis in original).

## Background

Accepting the allegations set forth in Hall's complaint as true, the material facts appear as follows. During 2002, NEBS employed Hall as a printing press operator. Until November of that year, Hall and another employee of NEBS - Mark Gagne - were romantically involved. During the course of that relationship,

2

Gagne threatened and assaulted Hall, prompting her to obtain a temporary domestic violence restraining order against him.

Hall told representatives of NEBS that she had obtained a restraining order against Gagne and she "expressed concern about Gagne being on the business premises during the same times that [she] was on the premises." Complaint at para. 5. NEBS responded by implementing a policy that prohibited Gagne from having any contact with Hall during working hours. When Gagne later violated that policy, Hall informed her supervisor. NEBS responded by: (1) transferring Gagne to an NEBS facility in a neighboring state; and (2) informing Hall that it would provide a security officer on the premises (during certain designated hours) for her protection. Id.

Approximately six weeks after transferring Gagne, however, NEBS informed Hall that it planned to transfer him back to the plant at which she worked. Hall says she immediately expressed concern and reminded NEBS officials of the threats that Gagne had leveled against her. Nevertheless, NEBS transferred Gagne back to the New Hampshire facility. Approximately 10 days later, Hall

3

told representatives of NEBS that Gagne had "been glaring at her in a menacing fashion that day and provided [NEBS] with additional copies of the [restraining order]."  Complaint at para. 8.

The following day, Hall was dismissed from work early due to inclement weather.  While in the NEBS parking lot clearing her car of snow, Hall was approached by Gagne, who was driving a snow plow owned by NEBS.  According to Hall's complaint, "Gagne approached [her] in a company truck, attacked her, assaulted her with a sharp weapon, threatened her life and person, and forced her into the company truck, and abducted her."  Id. at para. 9.  As a result of the attack, Hall suffered several stab and bite wounds.

Upon learning of the attack, NEBS notified its workers' compensation insurance carrier.  It then provided Hall with forms necessary to complete a claim for workers' compensation benefits.  But, by letter dated January 17, 2003, Hall's attorney notified NEBS that she was not pursing a claim for workers' compensation

4

and was, instead, exploring the possibility of filing a civil (negligence) suit against NEBS.

Meanwhile, Bert Sell, a claims investigator hired by NEBS's workers' compensation insurance carrier (who was apparently unaware that Hall did not intend to seek workers' compensation benefits), looked into the assault and concluded that Hall's injuries fell outside the scope of New Hampshire's Workers' Compensation Law, N.H. Rev. Stat. Ann. ("RSA") ch. 281-A (the "Act"). In a letter dated January 27, 2003 (i.e., 10 days after Hall had already notified NEBS that she did not intend to pursue a claim for workers' compensation benefits), Sell informed Hall of his conclusions. Plaintiff's memorandum (document no. 7) at 11-12.

This suit followed, in which Hall brings two claims against NEBS: negligence (count 1) and negligent hiring, retention, or supervision (count 2).

## Discussion

The sole question presented by NEBS's motion to dismiss is whether the Act's so-called exclusivity provisions preclude Hall from seeking to recover directly from her employer, NEBS. The relevant portion of the Act provides that:

> An employee of an employer subject to this chapter shall be <u>conclusively presumed to have accepted the provisions of this chapter</u> and, on behalf of the employee or the employee's personal or legal representatives, to have <u>waived all rights of action</u> whether at common law or by statute or provided under the laws of any other state or otherwise:
>
> > (a) Against the employer or the employer's insurance carrier . . . .

RSA 281-A:8 I (emphasis supplied). <u>See also</u> <u>Karch v. BayBank FSB</u>, 147 N.H. 525, 530 (2002) (noting that an employee who is entitled to compensation under the Act may not bring a separate tort action against her employer and holding, "Indeed, the Workers' Compensation Law expressly provides that an employee subject to that chapter waives the right to bring such a separate action in exchange for the acceptance of benefits.").

I.    Hall's Estoppel Claim.

As an initial matter, Hall claims that NEBS is estoped from asserting that the exclusivity provisions of the Act bar her negligence claims.  Specifically, she says because NEBS (through Mr. Sell, the agent of NEBS's insurance carrier) issued a formal "Memo of Denial of Workers' Compensation Benefits," in which he concluded that Hall was injured in a "domestic dispute that was not work related," NEBS cannot now assert that her negligence claims are precluded by the Act's exclusivity provisions.

As to that particular argument, Hall relies on two documents that she has attached to her memorandum of law (but which are not part of her complaint).  NEBS filed a reply memorandum, to which it attached additional documents, as well as an affidavit.  Then, most recently, Hall submitted a surreply memorandum, attached to which is an affidavit executed by her attorney, describing certain communications he had with Mr. Sell. Because both parties have submitted documents upon which they ask the court to rely and which are not a part of Hall's complaint, and because neither party has objected to the submissions made by the other[1] (nor has

---

[1]    NEBS initially asserted that Hall had not properly authenticated two documents attached to her memorandum of law in

either party sought additional time to further supplement the record), the court will, as to the "estoppel" issue, treat NEBS's motion as one for summary judgment. See Fed. R. Civ. P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."). See also Pure Distributors, Inc. v. Baker, 285 F.3d 150, 154 (1st Cir. 2002); Garita Hotel Ltd. P'ship. v. Ponce Federal Bank, F.S.B., 958 F.2d 15, 18-19 (1st Cir. 1992).

In support of her estoppel argument, Hall says NEBS (through Mr. Sell, the agent of NEBS's insurance carrier) knowingly made representations (i.e., that her injuries are not compensable under the Act), upon which she reasonably relied to her detriment. As authority for her position, Hall points to Appeal of Cloutier Lumber Co., 121 N.H. 420 (1981), in which the court held that "[e]stoppel prevents one party from asserting a position contrary to one previously taken when it would be unfair

opposition to NEBS's motion to dismiss. Hall has, however, addressed that issue.

8

to allow him to do so.  It arises when one party has knowingly made representations upon which the other reasonably has relied to his detriment."  Id. at 422.  Importantly, however, Hall cannot show that she relied to her detriment upon Mr. Sell's statements.

Based upon the documents presented by the parties, it is clear that Hall notified NEBS of her intention not to seek workers' compensation benefits before she received the denial of benefits memo from Mr. Sell.  Consequently, the documents of record establish that Hall did not make her decision to forego a claim for benefits under the Act "in reliance upon" Mr. Sell's memo.

Additionally, even if the timing of the relevant events were different, Hall still could not show detrimental reliance because the time during which she may appeal the insurance carrier's adverse decision has not lapsed.  See RSA 281-A:42-d (affording claimants 18 months after receiving notice that a workers' compensation claim has been denied by the insurance carrier within which to petition for a hearing).  Because Hall was

injured on January 3, 2003, that 18-month period has not yet expired. Accordingly, even assuming Mr. Sell can properly be viewed as NEBS's agent, Hall cannot show that she relinquished any rights as a result of having detrimentally relied on his denial letter.

II. Compensable Injuries Under the Act.

The Act defines compensable injuries as those "arising out of and in the course of employment." RSA 281-A:2 XI. In interpreting that statutory provision, the New Hampshire Supreme Court has held that, for an employee's injuries to be compensable under the Act, it must be shown:

> (1) that the injury arose out of employment by demonstrating that it resulted from a risk created by the employment; and (2) that the injury arose in the course of employment by demonstrating that (A) it occurred within the boundaries of time and space created by the terms of employment; and (B) it occurred in the performance of an activity related to employment, which may include a personal activity if reasonably expected and not forbidden, or an activity of mutual benefit to an employer and employee.

Cook v. Wickson Trucking Co., 135 N.H. 150, 154 (1991) (citations and internal quotation marks omitted). Failure to prove any one of those three elements is fatal to a claim for benefits under

10

the Act.  Harrington v. Brooks Drugs, Inc., 148 N.H. 101, 105 (2002).  So, to prevail on its claim that Hall's negligence claims are, as a matter of law, barred by the Act's exclusivity provisions, NEBS must show that the circumstances leading to Hall's injuries satisfy each of the three elements identified by the New Hampshire Supreme Court.[2]

---

[2]    Although not central to its argument in support of its motion to dismiss, NEBS seems to suggest that the Act's exclusivity provision precludes Hall from bringing her common law negligence claims against it even if her injuries are not compensable under the Act.  See, e.g., Defendant's memorandum at 6 n. 4 ("the workers' compensation bar to Hall's negligence claims against NEBS in this case is unrelated to the ultimate determination as to whether her injuries are actually compensable.").  In other words, NEBS apparently believes that the exclusivity provisions of the Act are not co-extensive with the Act's coverage.  NEBS seems to assert that the exclusivity provision actually sweeps much more broadly, and bars all common law and statutory claims by a worker against an employer, even when the employee's underlying injury is not compensable under the Act.  Such a broad reading of the Act's exclusivity provisions, would likely implicate due process concerns.  See generally Young v. Prevue Products, Inc., 130 N.H. 84, 87-88 (1987).  See also 6 A. Larson, Workers' Compensation Law, § 100 at 100-1 (2002) ("The compensation remedy is exclusive of all other remedies by the employee . . . against the employer and insurance carrier for the same injury, if the injury falls within the coverage formula of the act.  If it does not, . . . the compensation act does not disturb any existing remedy.")(emphasis supplied).  Nevertheless, it is not necessary to resolve that point in order to resolve NEBS's motion to dismiss.

11

III. <u>Injuries Stemming from the Assault on Hall</u>.

Hall contends that because she was assaulted <u>after</u> she had been dismissed from work and since she was no longer within the physical confines of NEBS's facility, she "was no longer engaged in any work-related activity" when the assault took place. Plaintiff's memorandum at 7. She goes on to say that there is "simply no relationship between cleaning ice and snow from a car windshield when leaving for home after dismissal from work, and employment-related activities." <u>Id.</u> Consequently, she says her injuries are not compensable under the Act and, therefore, she is not barred from suing her employer, NEBS, to recover damages for the injuries inflicted by Gagne.

NEBS, on the other hand, contends that Hall's injuries <u>are</u> compensable under the Act. Thus, says NEBS, she is statutorily barred from pursing any claims against it that arise out of those work-related injuries; her remedies are limited to compensation under the Act.

A.   Injuries "Arising of out Employment."

To prevail on its motion to dismiss, NEBS must first show that there was a causal connection between Hall's injuries and her employment.  See, e.g., Harrington, 148 N.H. at 105. Importantly, however, "the question is not what the employee is about to do, or has just been doing, but whether or not at the time of injury he is within the 'zone of his employment.'" Whittemore v. Sullivan County Homemaker's Aid Service, 129 N.H. 432, 436 (1987) (quoting Gallienne v. Becker Bros. Shoe Co., 88 N.H. 375, 380 (1937)).

Hall emphasizes the fact that, when she was attacked, she was no longer "on the clock" and, instead, had been released from work for the day and was preparing to go home.  That focus is, however, too narrow.  As the New Hampshire Supreme Court has repeatedly observed, the provisions of the Act are construed broadly and liberally, and all reasonable doubts are resolved in favor of finding a claimed injury to be compensable under the Act.  See, e.g., Appeal of Denton, 147 N.H. 259, 260 (2001); Appeal of Estate of Balamotis, 141 N.H. 456, 458 (1996).  See also Gagnon v. New Hampshire Ins. Co., 133 N.H. 70, 76-77 (1990)

13

(rejecting plaintiff's assertion that the Act's language should be liberally construed in favor of the injured employee's position, regardless of whether he or she seeks benefits under the Act or seeks to demonstrate that his or her injuries are not compensable under the Act, thereby allowing suit against the employer).

In this case, accepting the facts pleaded by Hall as true, her injuries were, as a matter of law, causally connected to her employment.  Stated in simplest terms, she plainly would not have been in the NEBS parking lot at the time of her injury had it not been for her employment.  See generally, Gagnon, 133 N.H. 76 ("First, the injury resulted from a risk created by her employment and therefore arose out of her employment.  The camp pool in which [plaintiff] nearly drowned was available to camp employees during their 'one-hour staff free swim.'  [Plaintiff] would not have been in the pool at the time of her seizure had it not been for her employment at Camp Allen."); U.S. Fidelity & Guar. Co. v. Gagne, 103 N.H. 420, 423 (1961) ("The evidence warranted finding and ruling that the plaintiff's injuries arose out of and in the course of her employment. . . . [P]laintiff was

utilizing the usual and expected means of access from the public street to her employment, and was injured upon property adjoining her place of employment and findably at the entrance to the employer's premises.  She encountered the hazard because of her employment, and her entry to her place of employment was clearly an activity which was in the course of her employment.").  See generally Balamotis, 141 N.H. at 458 ("Once an activity has been placed in physical contact with the employment environment, the exact nature and purpose of the activity itself does not have to bear the whole load of establishing work connection, and consequently the employment-connection of that nature and purpose does not have to be as conspicuous as it otherwise might.") (citation and internal quotation marks omitted).

In 1937, the New Hampshire Supreme Court addressed an issue similar to that presented in this case and concluded:

> [E]mployment includes not only the actual doing of the work, but <u>a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done</u>.  If the employee be injured while passing, with the express or implied consent of the employer, to or <u>from his work</u> by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is

15

> one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance.

Gallienne, 88 N.H. at 377-78 (emphasis supplied) (quoting Bountiful Brick Co. v. Giles, 276 U.S. 154, 158 (1928)).

As to the first of the three elements NEBS must demonstrate, then, it has established that Hall's injuries arose out of a risk created by her employment.

B.    Injury within the "Boundaries of Space and Time Created by the Terms of Employment."

The New Hampshire Supreme Court has made clear that, "the ordinary perils of travel between home and work are not considered hazards of employment and, therefore, that injuries arising from such travel are noncompensable under our Workers' Compensation Law." Harrington, 148 N.H. at 106. Here, however, Hall was not injured during the course of her commute to or from work. Rather, she was injured in the NEBS parking lot, immediately after she had been released from work and as she prepared to drive home. Under New Hampshire law, injuries sustained under those conditions are deemed to have occurred

16

within the boundaries of time and space created by the terms of employment.  See, e.g., Gallienne, 88 N.H. at 380 ("It is of no consequence that the plaintiff's time was her own [when she was injured], and that, with the defendant's acquiescence, she had then gone outside the factory in pursuit of her own private affairs.  Such is always the case when the employee is going back and forth between his home and his work.  The question is not what the employee is about to do, or has just been doing, but whether or not at the time of injury he is within the 'zone of his employment.'" (citation omitted).  See also Gagne, 103 N.H. at 423.  See generally 1 A. Larson, Workers' Compensation Law, § 13.01[1] at 13-2 (2002) ("The course of employment is not confined to actual manipulation of the tools of the work, nor to the exact hours of work.  On the other hand, while admittedly the employment is the cause of the worker's journey between home and factory, it is generally taken for granted that workers' compensation was not intended to protect against all the perils of that journey.  Between these two extremes, a compromise on the subject of going to and from work has been arrived at, largely by case law, with a surprising degree of unanimity: for an employee having fixed hours and place of work, going to and coming from

17

work is covered only <u>on the employer's premises</u>.") (emphasis in original) (footnotes omitted).


    C.    An Activity Related to Employment.

Finally, in order to prevail on its motion to dismiss, NEBS must demonstrate that Hall sustained her injuries "in the performance of an activity related to employment, which may include a personal activity if reasonably expected and not forbidden." <u>Harrington</u>, 148 N.H. at 105 (citation omitted). Hall asserts that, as a matter of law, NEBS cannot sustain its burden with regard to that element. Specifically, she suggests that the New Hampshire Supreme Court has concluded that an employee is engaged in a "personal activity" that is "reasonably expected" <u>only</u> when the employee engages in conduct that is "on the employer's premises, utilizing the employer's equipment, with the employer's knowledge." Plaintiff's surreply memorandum at 4 (quoting <u>Harrington</u>, 148 N.H. at 106). Again, however, plaintiff's focus is overly narrow.

While the New Hampshire Supreme Court has certainly recognized that an employee might well be engaged in "reasonably

18

expected personal activities" when he or she performs some act on the employer's premises, with the assistance of the employer's equipment, and with the employer's knowledge, it has by no means limited the scope of that phrase to those precise circumstances. So, as discussed earlier, in Gagnon the court concluded that the claimant was engaged in an activity that was "reasonably expected and not forbidden," when she was injured while swimming in her employer's pool. Id. at 76. See also Balamotis, 141 N.H. at 459 (concluding that employee who died during the course of a lunch-time volleyball game on the employer's premise had been engaged in a personal activity "reasonably expected and not forbidden"); Appeal of Griffin, 140 N.H. 650, 656 (1996) (concluding that injuries the claimant sustained after engaging in a fight with a co-employee shortly after dining out were compensable under the Act, since "petitioner's personal activity of dining out was reasonably expected and not forbidden by the employer. The petitioner's injury thus arose in the course of his employment."); Witham v. Gellis, 91 N.H. 226, 227 (1940) (concluding that a filling station employee who was injured as he crossed a highway while returning from a personal errand was engaged in "matters of a personal nature reasonably to be

19

undertaken and not expressly forbidden," and, therefore, his injuries were compensable under the Act).

Here, although Hall was not engaged in activity of direct benefit to NEBS when she was attacked, the act of cleaning snow off her car before leaving NEBS's parking lot was, under New Hampshire law, a personal activity that was reasonably expected and not forbidden. And, because her injuries resulted from a risk created by her employment, and because they occurred within the "boundaries of time and space" created by the terms of her employment, those injuries "arose out of her employment." Consequently, they are compensable under the Act and Hall is statutorily barred from suing her employer to recover common law damages.

IV. Applicability of LaBonte v. National Gypsum Co.

Finally, Hall's reliance upon (as well as her efforts to distinguish, in part) the New Hampshire Supreme Court's holding in LaBonte v. National Gypsum Co., 110 N.H. 314 (1970), warrants brief discussion. In LaBonte, as here, the claimant was injured as a result of an attack by a co-worker. And, in an effort to

20

avoid the Act's exclusivity provision, LaBonte, like Hall, said the attack was a result of "a purely personal matter unrelated to his employment."  Id. at 316.  In discussing the application of the Act to injuries sustained as a result of an attack by one employee upon another, the court noted:

> The law is well established that if the assault arose from a personal quarrel unrelated to the employment or its environment, the resulting injury did not arise out of the employment.  If the friction and strain arises not because of the enforced contacts resulting from the duties of the employment, but rather because the two employees, who met each other on the job, choose to enter a purely private relationship just as they might if they had met elsewhere and quarrels develop they do not arise out of the employment.  To be compensable the injury received in a quarrel must result from the conditions and obligations of the employment and not merely from the bare existence of the employment.

Id. at 316-17 (citations and internal quotation marks omitted).  Not surprisingly, Hall points to that language and says the circumstances surrounding her injuries fall squarely within the boundaries described by the court: although she and Gagne apparently met at NEBS, they developed a personal relationship outside of work and his attack upon her stemmed directly from "friction and strain" that developed entirely outside the work environment.

21

Importantly, however, the LaBonte court ultimately concluded that the plaintiff's claims against his employer were barred by the Act's exclusivity provision. Specifically, the court concluded that because the plaintiff alleged that his injuries were proximately caused by his employer's failure to act upon knowledge that the attacker "sought and intended to inflict" injury upon plaintiff and, by such inaction, breached a duty to take reasonable affirmative steps to ensure plaintiff's safety, his injuries necessarily resulted "from the conditions and obligations of the employment." Id. at 317.

So it is in this case. Hall alleges that her injuries were proximately caused by NEBS's failure to make the workplace reasonably safe and its failure to take adequate steps to protect her against Gagne's assault in the NEBS parking lot. Among other things, she claims:

> The defendants owed a duty to plaintiff to use reasonable care and not to unreasonably create a condition of employment that foreseeably enhanced the risk of criminal attack.

> The defendants breached said duty by unreasonably creating a condition of employment that foreseeably enhanced risk of criminal attack as follows:

    a.  Defendants created <u>conditions of employment</u> that were so fraught with danger that it was likely, or even probable, that the plaintiff would be subject to criminal attack by a third party;

    b.  Defendants' <u>employment conditions</u> induced reliance by plaintiff on defendant to keep Gagne out of contact with plaintiff while he was at the New Hampshire facility;

                            * * *

    h.  Defendants' <u>employment conditions</u> failed to provide adequate security;

    i.  Defendants' <u>employment conditions</u> failed to provide adequate lighting; . . .

Complaint at paras. 12-13 (emphasis supplied).


Given the factual allegations in Hall's complaint, her injuries necessarily arose "out of and in the course of employment."  RSA 281-A:2 XI.  As the <u>LaBonte</u> court concluded:

> [C]onstruing plaintiff's declaration as a whole most favorably to [her] admits of only one conclusion, that is, that [her] injury resulted from the conditions and obligations of the employment.  In other words, plaintiff's declaration established as a matter of law that [her] injury resulted from the employer's negligent supervision of his employees and was an

23

accidental injury arising out of and in the course of [plaintiff's] employment and compensable under RSA ch. 281.

Id. at 317 (citations and internal quotation marks omitted).


## Conclusion

In light of the allegations set forth in her complaint (which are accepted as true), plaintiff's negligence claims against NEBS, her employer, are, as a matter of law, barred by the exclusivity provision of New Hampshire's Workers' Compensation Act. Accordingly, defendant's motion to dismiss (document no. 3) is granted. Defendant's request for oral argument (document no. 14) is denied as moot.


The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

April 29, 2003

cc:  Robert D. Hunt, Esq.
     Richard L. Alfred, Esq.
     Andrew D. Dunn, Esq.

24