Compensation Appeals Board
No. 2006-394

APPEAL OF TODD MALOUIN
(New Hampshire Compensation Appeals Board)

Argued: January 18, 2007
Opinion Issued: June 13, 2007

*McDowell & Osburn, P.A.*, of Manchester (*Mark D. Morrissette* on the brief and orally), for the petitioner.

*Devine and Nyquist, P.A.*, of Manchester (*Merrick C. Weinstein* on the brief and orally), for the respondent.

BRODERICK, C.J. The petitioner, Todd Malouin, appeals from a decision of the New Hampshire Compensation Appeals Board (Board) that he did not suffer a compensable work-related injury. We reverse and remand.

The record supports the following facts. Malouin was employed for approximately ten years by the respondent, Oasis Health & Sports Center, Inc., d/b/a The Executive Health & Sports Center (Club). At the time of his injury in 2004, Malouin served the Club as a personal trainer and was also the director of medical outreach.

Unlike the rest of the Club's personal trainers, who were paid on an hourly basis, Malouin was paid a salary. In addition, both Malouin and the other personal trainers received commissions based on the number of personal training sessions they had with members (clients) of the Club. Club staff, including the personal trainers, were permitted, but not required, to perform personal workouts while they were on duty. Club management suggested or encouraged that some members of the staff, including Malouin, perform personal workouts during their shifts as a way of attracting additional clients.

On September 17, 2004, Malouin was scheduled to finish work at 5:00 p.m. After finishing with his last client at approximately 4:00 p.m., he began a personal workout and intermittently filled out payroll sheets. At approximately 4:45 p.m., while using one of the Club's strength-training machines, Malouin suffered a rupture of his left biceps tendon.

Malouin sought workers' compensation benefits. The Board rejected his contention that he suffered a work-related injury under RSA 281-A:2, XI (1999), and denied his motion for reconsideration and rehearing. This appeal followed. Malouin contends that the Board erred in ruling that his injury was excluded from the definition of "injury" under a 1997

amendment to RSA 281-A:2, XI. Alternatively, he contends that his injury is compensable under the savings clause of the amendment. Finally, he argues that the Board's application of the amendment violated the equal protection guarantee of Part I, Articles 12 and 14 of the New Hampshire Constitution.

I

In denying Malouin's claim, the Board interpreted provisions of the Workers' Compensation Law, RSA chapter 281-A (1999 & Supp. 2006). We will not overturn the Board's decision except for errors of law, or if we are satisfied by a clear preponderance of the evidence that its decision is unjust or unreasonable. The Board's findings of fact will not be disturbed if they are supported by competent evidence in the record, upon which the Board's decision reasonably could have been made. *See Appeal of Lorette,* 154 N.H. 271, 272 (2006); *see also* RSA 541:13 (2007). Interpretation of a statute is a question of law, which we review *de novo. Lorette,* 154 N.H. at 272. On questions of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *Appeal of Kraft Foods,* 147 N.H. 572, 574 (2002). Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme. *Cloutier v. City of Berlin,* 154 N.H. 13, 17 (2006).

II

█ Malouin's entitlement to workers' compensation benefits depends upon whether he suffered an "injury" under RSA 281-A:2, XI. The statute reads, in pertinent part:

> "Injury" or "personal injury" as used in and covered by this chapter means accidental injury or death arising out of and in the course of employment .... Notwithstanding any law to the contrary, "injury" or "personal injury" shall not mean accidental injury, disease, or death resulting from participation in *athletic/recreational activities,* on or off premises, unless the employee reasonably expected, based on the employer's instruction or policy, that such participation was a condition of employment or was required for promotion, increased compensation, or continued employment.

(Emphasis added.) To determine whether an injury arose "out of and in the course of employment," a claimant must prove:

: "(1) that the injury arose out of employment by demonstrating that it resulted from a risk created by the employment; and (2) that the injury arose in the course of employment by demonstrating that (A) it occurred within the boundaries of time and space created by the terms of employment; and (B) it occurred in the performance of an activity related to employment, which may include a personal activity if reasonably expected and not forbidden, or an activity of mutual benefit to employer and employee."

*Appeal of Estate of Balamotis*, 141 N.H. 456, 458 (1996) (quoting *Murphy v. Town of Atkinson*, 128 N.H. 641, 645-46 (1986)).

In its decision, the Board used the above-quoted test and found that:

In applying that test to the current facts, there is little doubt that the claimant's injury arose during the course of his employment. The claimant was performing the same actions that he might expect to demonstrate to a club member who had retained his services as a personal trainer. Sufficient evidence exists to find that the injury occurred within the "boundaries of time and space created by the terms of employment," and that the activity was not only reasonably expected and not forbidden, but was expressly permitted and even encouraged by the employer. Furthermore, the activity had a mutual benefit to both the employer and the employee, in that the activity aided the employee's knowledge and use of the equipment and increased his visibility and exposure to members of the club who might retain his services. Members who hired the personal trainers for various sessions both increased the club's revenue and the commission paid to the individual employee.

Neither party has contested these findings. Subsequently, the Board examined the exclusionary language of RSA 281-A:2, XI and stated:

The first issue that must be addressed is whether the claimant was engaging in athletic/recreational activity and would thus fall into the statutory exclusion. It is difficult to characterize the claimant's activities at the time as anything but athletic/recreational. Even though such activities were also the business of the employer, that fact does not remove the claimant's activity from the statutory characterization. And the statute contains no exception for athletic/recreational activities that are directly related to an injured worker's employment activities.

Finally, the Board considered whether Malouin fell within the statute's savings clause ("unless the employee reasonably expected, based on the employer's instruction or policy, that such participation was a condition of employment or was required for promotion, increased compensation, or continued employment"). The Board ruled that he did not, as "[n]othing indicate[d] that [his] work-out was *required* for his continued employment, promotion or increased compensation." Accordingly, the Board denied his claim for workers' compensation benefits.

Both parties contest the effect of the last sentence of RSA 281-A:2, XI, which was added to the statute in 1997. *See* Laws 1997, 163:1. The Club contends that the language is "clear and unambiguous" and precludes compensation for Malouin's injury. Malouin argues that the amendment was "designed to exclude injuries that arose out of activities that were not usual, normal or customary with respect to an employee's work activities." He contends that the language is ambiguous, and must consequently be construed in his favor.

The term "athletic/recreational activities" is not defined in RSA chapter 281-A, nor have we previously construed the term. When the issue raised presents a new question of statutory construction, we begin our analysis with an examination of the statutory language. *Appeal of Ann Miles Builder*, 150 N.H. 315, 318 (2003). Although we give undefined language its plain and ordinary meaning, we must keep in mind the intent of the legislation, which is determined by examining the construction of the statute as a whole, and not simply by examining isolated words and phrases found therein. *Id.* When a statute's language is plain and unambiguous, we need not look beyond the statute for further indication of legislative intent. *Kraft Foods*, 147 N.H. at 574. Where the statutory language is ambiguous or where more than one reasonable interpretation exists, however, we review legislative history to aid in our analysis. *Ann Miles Builder*, 150 N.H. at 318.

Although the words "athletic" and "recreational" are both susceptible to plain and ordinary meanings, the term "athletic/recreational activities" does not enjoy the same level of clarity. The words "athletic" and "recreational" are separated by a slash. The slash "is inherently ambiguous: its function may be conjunctive . . . or disjunctive." B. GARNER, THE REDBOOK: A MANUAL ON LEGAL STYLE § 1.80, at 43 (2002); *see also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 622 (unabridged ed. 2002) (providing seven definitions for slash symbol, including "or" and "and or"). The pertinent definitions of "activity" may be read to include an employment or vocational component, as well as a non-vocational component. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 22 ("an *occupation*, pursuit, or *recreation* in which a person is active . . . a

form of organized, supervised, and often extracurricular recreation (as athletic games, dramatics, or dancing)" (emphases added)).

Consequently, we believe that the term "athletic/recreational activities" may reasonably be construed in a variety of ways, including: (1) the conjunctive "athletic and recreational activities," where the activities in question are both athletic and recreational in nature, to the exclusion of athletic activities that are vocational in nature; and (2) the disjunctive "athletic or recreational activities," where the activities in question are either athletic or recreational in nature, and could either include or exclude athletic activities that are vocational in nature.

In light of these varied reasonable interpretations, we conclude that the term "athletic/recreational activities" in RSA 281-A:2, XI is ambiguous. *See, e.g., Warner v. Clarendon Ins. Co.*, 154 N.H. 331, 334 (2006) (where relevant insurance policy language susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, policy provision considered ambiguous). Consequently, we look to the legislative history of RSA 281-A:2, XI to aid in our analysis. *See Ann Miles Builder*, 150 N.H. at 319.

Both parties agree that the 1997 statutory amendment was arguably adopted in reaction to our decision in *Appeal of Estate of Balamotis*. In *Balamotis*, the decedent was a field service engineer, employed by Digital Equipment Corporation, who played volleyball with his co-workers several times per week during his lunch-hour break. *Balamotis*, 141 N.H. at 457. Although the volleyball game was not among several company-sponsored activities available to employees, it was not forbidden. *Id.* During one of those lunchtime volleyball games, the decedent died, presumably as a result of an aggravated heart condition. *Id.* Pursuant to the version of RSA 281-A:2, XI in effect at that time, the Board denied compensation to the decedent's estate, ruling that his death did not arise out of and in the course of his employment. *Id.* Holding that, in general, on-premises recreational activities conducted during the workday arise out of the employment and that the decedent's injury arose in the course of his employment, we reversed and remanded the case for a determination of the cause of death. *Id.* at 459, 461.

*Balamotis* informs our examination of the legislative history concerning the 1997 amendment to RSA 281-A:2, XI. That legislative history, however, reveals that the legislature was concerned over the availability of workers' compensation benefits for injuries sustained while employees participated in a variety of pursuits, occurring both during and after work hours, and both on and off work premises. When the amendment was introduced in the Senate as SB 38, the voiced concern was for "participation in athletic activities." N.H.S. JOUR. 221 (1997). At a hearing

on SB 38, there were concerns over "a sport or activity," "activities not performed in the duties of your job," "sports activities," and "recreational activity." HEARING ON SB-38 BEFORE THE SENATE COMM. ON INS. at 1-3 (January 14, 1997). At subcommittee work sessions on SB 38, the "Comments and Recommendations" annotations indicate that there were concerns with "sporting or exercise activities," "activities," "healthy exercise activities," "athletic activities," "fitness programs," "wellness programs," and "exercise or physical conditioning activities done for job related fitness, physical conditioning and performance." SUBCOMMITTEE WORK SESSION BEFORE THE HOUSE COMM. ON LABOR, INDUSTRIAL & REHABILITATIVE SERVICES at 1-3 (April 3 and 9, 1997) [hereinafter SUBCOMMITTEE WORK SESSION].

Much of the legislative history indicates that the legislature intended the 1997 amendment to RSA 281-A:2, XI to apply to those sorts of activities at issue in *Balamotis* and other earlier cases where the claimant's injury occurred during a recreational athletic activity separate from the claimant's usual employment functions. *See, e.g., Appeal of Cooper,* 141 N.H. 184 (1996) (holding injury compensable where chemical company employee was injured playing softball for company softball team). Other parts of the legislative history, however, indicate concerns with purely athletic activity, sports, non-athletic recreational activities, and certain employment-related physical fitness programs or activities.

Without further examination, we believe the legislative history is inconclusive as to the exact definition intended by the legislature for the term "athletic/recreational activities." Indeed, the subcommittee work session comments indicate that Representative Maxfield believed that the change proposed by SB 38 was "vague by design." SUBCOMMITTEE WORK SESSION, *supra* at 1.

The Club argues that Malouin's personal workout "can only be characterized" as falling within the term "athletic/recreational activities." Due to the ambiguous nature of the term and the inconclusive legislative history, we assume, without deciding, that for the purpose of this case, Malouin's workout was an "athletic/recreational activity."

### III

Given our assumption, above, we turn our attention to the statute's savings clause, which reads:

> unless the employee reasonably expected, based on the employer's instruction or policy, that such participation was a condition of employment or was required for promotion, increased compensation, or continued employment.

RSA 281-A:2, XI. The Board found that Malouin did not fall within the statute's savings clause, as "[n]othing indicate[d] that [his] work-out was *required* for his continued employment, promotion or increased compensation." Conspicuous by its absence in the Board's conclusion, however, is any reference to the term "condition of employment." If Malouin reasonably expected that participation in his workout was a "condition of employment," then the statute would not preclude compensation for his injury. Either the Board neglected the term or equated it with one or more of the follow-on statutory terms. In giving the term effect as we must, we hold that the Board erred in either case. *See N.H. Motor Transport Assoc. Employee Benefit Trust v. N.H. Ins. Guaranty Assoc.*, 154 N.H. 618, 625 (2006) ("When construing a statute, we must give effect to all words in a statute.").

At the subcommittee work sessions on SB 38, Representative Clegg had successfully moved to amend the bill by including "condition of employment" in the last sentence. SUBCOMMITTEE WORK SESSION, *supra* at 2-3. Given the varied definitions of the word "condition," the term "condition of employment" might, at first blush, appear to be ambiguous in nature. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 473 (defining "condition" as, among other things, "something established or agreed upon as a requisite to the doing or taking effect of something else" or "a mode or state of being"). If we were to use the first definition of "condition" in our construction of the term "condition of employment," the term could refer to those things requisite or mandatory for Malouin to gain employment by the Club. To define "condition of employment" in that manner within the context of the complete statutory language, however, would be problematic for two reasons. First, we could be in the peculiar position of including, as compensable, injuries resulting from activities undertaken by a claimant prior to his employment. Second, such a construction would render redundant and superfluous the final words of the savings clause ("was required for ... continued employment"). We would have little tolerance for such results. *See Weare Land Use Assoc. v. Town of Weare*, 153 N.H. 510, 511 (2006) ("The legislature will not be presumed to pass an act leading to an absurd result."); *N.H. Motor Transport*, 154 N.H. at 625 ("When construing a statute, we ... presume that the legislature did not enact superfluous or redundant words.").

If, however, we rely upon the second definition of "condition" in our construction of the term "condition of employment," as used in the savings clause, the term would refer to the usual or normal employment environment at the Club. Given our rules of statutory construction, we hold that this latter construction is the only reasonable one for the purpose of maintaining the savings clause as a "clear and exacting statutory

standard." *See Kraft Foods,* 147 N.H. at 575; *see also Ann Miles Builder,* 150 N.H. at 318 ("[W]e must keep in mind the intent of the legislation, which is determined by examining the construction of the statute as a whole, and not simply by examining isolated words and phrases found therein.").

In addition, this construction is consistent with our decision in *Maheux v. Cove-Craft Co.,* 103 N.H. 71 (1960). In *Maheux,* the claimant suffered permanent injury to his eye while engaged, at the place of his employment during the noon lunch hour, in operating a table saw to manufacture a checkerboard for his own use. *Maheux,* 103 N.H. at 72. While the commissioner of labor had denied the claimant compensation under the Workers' Compensation Law, the trial court found that Maheux's injury was suffered in the course of, and arose out of, his employment, stating that

> the plaintiff had never been told not to use any machine for personal use during the noon hour and that for several months prior to the accident such use had been made by employees who ate their lunch at the factory. The Court further found it was a custom or practice for such employees to use their employer's machines during the lunch hour for individual projects, and that the defendant employer had through the knowledge of its owner ... and that of a supervisory employee ... notice of this practice or custom.

*Id.* (quotations, ellipses, and brackets omitted). We affirmed the decision of the trial court, stating:

> The plaintiff could fairly infer not only that the use which he was making of the employer's machinery was known to the employer and so a permitted use, but also that under the terms upon which he was hired, it was a use encouraged by the employer as a condition of the employment.

*Id.* at 75 (citation omitted).

Most important, our conclusion is in accordance with "our practice to liberally construe the Workers' Compensation Law, resolving all reasonable doubts in statutory construction in favor of providing the broadest reasonable effect to the statute's remedial purpose of compensating injured employees," *Appeal of Hypertherm,* 152 N.H. 21, 24 (2005).

■ Accordingly, we hold that the Board erred as a matter of law in finding that Malouin's claim failed under the statute's savings clause. We

need not determine here the absolute parameters for the statutory term "condition of employment." Instead, under the facts of this case, we simply conclude that Malouin reasonably expected that the on-premises personal exercise workout of a salaried personal trainer at a health and sports club, conducted during the course of his normal working hours for an employer that both permitted and encouraged its personal trainers to perform such workouts while they were on duty in order to provide a direct benefit to the club by securing additional clients, was encompassed by the term "condition of employment" for the purpose of RSA 281-A:2, XI. Of course, if the legislature disagrees with our construction of the statutory language, it is free to amend it as it sees fit. *See Marceau v. Concord Heritage Life Ins. Co.*, 149 N.H. 216, 221 (2003).

Because of our holding that Malouin's participation in his personal workout was encompassed by the term "condition of employment" in RSA 281-A:2, XI, we need not address his argument concerning the equal protection guarantee of the New Hampshire Constitution. Instead, we remand this case to the Board for further proceedings in accordance with this opinion.

*Reversed and remanded.*

DUGGAN and HICKS, JJ., concurred; GALWAY, J., with whom DALIANIS, J., joined, dissented.

GALWAY, J., dissenting. "We are the final arbiter of the meaning of the workers' compensation statute, and *the nature and extent of compensation to the injured employee is governed by the express statutory language* and that which can be fairly implied therefrom." *Appeal of Woodmansee*, 150 N.H. 63, 67 (2003) (emphasis added). In construing a statute, we ascribe the plain and ordinary meaning to words used, considering the statute as a whole and interpreting it consistent with its purpose. *Appeal of Denton*, 147 N.H. 259, 260 (2001). Any reasonable doubt in construing a workers' compensation statute is resolved in favor of the injured employee. *Appeal of Hypertherm*, 152 N.H. 21, 24 (2005). In this jurisdiction, statutory words and phrases are interpreted according to their common and approved usage, unless the terms have a technical or otherwise peculiar meaning. *Appeal of Town of Hampton Falls*, 126 N.H. 805, 809 (1985); *see also* RSA 21:2 (2000). The compensation appeals board's decision will not be overturned unless it is erroneous as a matter of law or the petitioner has demonstrated that the order is unjust or unreasonable. *Appeal of Kraft Foods*, 147 N.H. 572, 574 (2002).

RSA 281-A:2, XI provides, in relevant part:

> Notwithstanding any law to the contrary, "injury" or "personal injury" shall not mean accidental injury, disease, or death resulting from participation in athletic/recreational activities, on or off premises, unless the employee reasonably expected, based on the employer's instruction or policy, that such participation was a condition of employment or was required for promotion, increased compensation, or continued employment.

The majority concludes that portions of RSA 281-A:2, XI are ambiguous, and that, even assuming the petitioner was participating in an athletic/recreational activity, he is entitled to workers' compensation because his personal workouts were a condition of his employment. Because I disagree with both conclusions, I respectfully dissent.

First, the majority concludes that the phrase "athletic/recreational activities" is ambiguous. "Athletic/recreational activities," when read in context, however, is not ambiguous. According to the majority, the phrase may be read as covering activities that are both athletic and recreational, to the exclusion of vocational athletic activities, or as covering activities that are athletic or recreational, which could include vocational athletic activities. The statute, however, includes in the definition of "injury" only those athletic/recreational activities in which the employee, based upon the employer's instruction or policy, reasonably expects to participate because of his employment. It is immaterial whether the athletic/recreational activities in question are vocational in nature. What is relevant is whether the employee's participation in the activity was related to his employment on account of his employer's instruction or policy. Because the majority's conclusion that RSA 281-A:2, XI is ambiguous relies upon the possibility that vocational athletic activities might be included, and because, under the unambiguous language of the statute, it is irrelevant whether the activities are vocational, I believe the majority incorrectly concludes that the phrase "athletic/recreational activities" is ambiguous.

Next, the majority concludes that the "savings clause" of RSA 281-A:2, XI appears to be ambiguous, but is not. We stated in *Kraft Foods*, however, that the requirement of RSA 281-A:2, XI, that participation in a particular activity be a "condition of employment" or be "required for promotion, increased compensation, or continued employment," is a "clear and exacting statutory standard." *Kraft Foods*, 147 N.H. at 574. The majority's opinion disregards the conclusion in *Kraft Foods* and concludes that this language, which has not changed since *Kraft Foods* was decided, is now ambiguous. Because, however, RSA 281-A:2, XI is not ambiguous, we need not look beyond the statute for further indication of legislative intent, *Kraft Foods*, 147 N.H. at 574, and we need only determine whether

the compensation appeals board (board) correctly applied the statute as written.

As to whether the petitioner's personal workouts were a "condition of employment," the majority relies upon differing common definitions of the term "condition" in concluding that the phrase "condition of employment" is susceptible of varying interpretations and is thus ambiguous. The phrase "condition of employment," however, is one with a peculiar, and specific, legal meaning. *See* RSA 21:2. Because we have stated that RSA 281-A:2, XI provides a clear and exacting standard, it is to this specific definition we must look, and not to the varied common definitions. A "condition of employment" is a "qualification or circumstance required for obtaining or keeping a job." BLACK'S LAW DICTIONARY 314 (8th ed. 2004). Here, the petitioner testified that the Club did not require him to perform personal workouts while on duty and that he was interviewed for hire based upon what he knew and could teach, rather than upon what he could physically do. Thus, performing personal workouts at the Club was not a qualification or circumstance required for obtaining or keeping his job, and was not, therefore, a condition of his employment. Accordingly, I would conclude that the board did not err in determining that the petitioner's personal workouts were not a condition of employment.

Additionally, the board determined that the petitioner's personal workouts were not required for promotion, increased compensation, or continued employment. Because the petitioner does not argue that his personal workouts were required for promotion or continued employment, we need only analyze whether the petitioner reasonably expected, based upon the Club's instruction or policy, that his personal workouts were required for increased compensation.

Although performing personal workouts was a method that personal trainers could use to attract clients, thereby increasing their commissions, the petitioner, as noted previously, testified that the Club did not require the trainers to perform any personal workouts. Additionally, the petitioner testified that the Club had a policy, which he followed, requiring him to remove the Club-issued shirt identifying him as an employee during any personal workouts. Moreover, according to the petitioner, although he primarily attracted clients through demonstrations of his knowledge, he also did so because he was well known in the community due to having had his own television show for a time, having been a competitive bodybuilder during the 1990s, his degree in exercise science, and his time as a model. Furthermore, the petitioner testified that around the time of his injury he had a "tremendous" client base which required him to work out after the Club had closed, when few people were present, because being approached by clients during the Club's regular hours was "almost bothersome."

Finally, the petitioner could not point to any data that showed a correlation between his personal workouts and the attraction of new clients. Therefore, the petitioner did not reasonably expect, based upon the Club's instruction or policy, that his personal workouts were for the purpose of increasing his compensation because they were not done for the purpose of attracting clients to increase his commissions. The board, therefore, correctly determined that the petitioner's personal workouts were not required for increased compensation.

Because the petitioner's personal workouts, including the one during which he was hurt, fall under the unambiguous exclusionary language in RSA 281-A:2, XI, the board properly determined that he did not suffer an "injury" for purposes of workers' compensation. Because the board did not err as a matter of law, and because the petitioner has not otherwise shown the board's decision to be unjust or unreasonable, I believe that the board's decision should be affirmed. For these reasons, I respectfully dissent.

DALIANIS, J., joins in the dissent.